IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY, | ) ) | CIVIL NO. 10-00199 SOM/KSC |
| Plaintiff, | ) ) ) | ORDER DENYING MOTIONS TO DISMISS AND STAY |
| vs. | ) ) ) | |
| THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation; and 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING MOTIONS TO DISMISS AND STAY

I.      INTRODUCTION.

In this contract dispute, American Motorists Insurance Company ("AMIC"), a surety on various performance bonds, has filed suit in federal district court against the bonds' principal, 1250 Oceanside Partners ("Oceanside"), and obligees, The Club at Hokuli`a, Inc. ("The Club"), and Hokuli`a Community Association ("HCA"), to obtain a declaration regarding the extent of AMIC's liability on bonds with penal sums totaling approximately $50 million. AMIC also seeks a declaration of the parties' rights and duties with respect to indemnity agreements, issued between Oceanside and AMIC, in conjunction with the bonds. Finally, AMIC brings claims against Oceanside for breach of

contract for allegedly defaulting on the indemnity agreements, quia timet, and specific performance.

The Club and HCA, which are also plaintiffs in a breach of contract suit pending in state court, along with Oceanside, now move to dismiss or stay this case pending resolution of the state lawsuit. The motions are denied. This case does not present the "exceptional circumstances" under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), that outweigh this court's duty to exercise its validly obtained jurisdiction. Although the court has discretion to dismiss the declaratory relief claim against The Club and HCA under the Declaratory Judgment Act, 28 U.S.C. § 2201, it will not do so because dismissal of the claim as to The Club and HCA alone would most likely add to, rather than alleviate, the duplicative nature of the federal and state court actions. Finally, the court rejects Oceanside's arguments that the suit should be dismissed because Oceanside is misjoined with The Club and HCA under Rule 20 of the Federal Rules of Civil Procedure and because this suit represents an improper attempt by a surety to compete with its obligees for a principal's assets.

II.      FACTUAL AND PROCEDURAL BACKGROUND.

         A.    Factual Background.

Around 1990, Oceanside bought 1,550 acres of land on the Big Island of Hawaii for a luxury residential community

2

development to be named "Hokuli'a."  First Amended Compl. ("FAC")
¶ 11, ECF No. 26.  Oceanside planned to develop various
recreational amenities for Hokuli'a homeowners, including a golf
course, golf maintenance facility, clubhouse, beach activity
center, and tennis courts.  Id.  Oceanside formed and organized
HCA as Hokuli'a's homeowners' association.  Id. ¶ 13.  Oceanside
formed and organized The Club to administer and manage Hokuli`a's
golf club.  Id.

       In September 1999, Oceanside contracted with The Club
to build recreational facilities at Hokuli'a.  Id. ¶ 15.
Oceanside posted a $28.8 million surety bond, issued by AMIC.
Id. ¶¶ 15, 20.  The contract between Oceanside and The Club (the
"Club Improvements Agreement") provided that The Club would
either pay for the construction of the recreational facilities
directly or would reimburse Oceanside later, with interest.  Id.
¶¶ 16-17.  AMIC alleges that The Club and/or Oceanside "have not
allocated funds consistently with the requirements" of the
contract, resulting in loss of money that could have and should
have been used to build the recreational facilities.  Id. ¶ 17.

       At the same time, Oceanside contracted with HCA to
build infrastructure supporting telephone, electric, and cable
utilities; to perform revegetation; and to build a park (the
"Phase 1 Agreement").  Id. ¶ 14.  Oceanside posted a $17.4
million surety bond, issued by AMIC.  Id. ¶¶ 14, 20.  In June

2001, Oceanside entered into a second agreement with HCA to build utility infrastructure and to perform revegetation (the "Phase 2 Agreement"). Id. ¶ 18. Oceanside posted another surety bond, issued by AMIC, for $4.6 million. Id. ¶¶ 18, 20.

In conjunction with the issuance of the surety bonds in 1999 and 2001, Oceanside and AMIC executed two agreements in which Oceanside agreed to indemnify AMIC for losses and expenses incurred by AMIC in connection with the bonds or resulting from any Oceanside violation of the terms of the indemnity agreements themselves. Id. ¶¶ 21-25. The 2001 indemnity agreement additionally gave AMIC the right to demand that Oceanside discharge AMIC from liability on the bonds. Id. ¶ 25. The indemnity agreements required Oceanside to deposit collateral with AMIC to cover AMIC's actual or anticipated losses in connection with the bonds. Id. ¶ 26.

Despite target completion dates of 2001 to 2004, many of the facilities and utility improvements remain unfinished today. Id. ¶¶ 14, 15, 18, 27. According to AMIC, The Club knew from at least 2003 that Oceanside had defaulted on its obligations under the Club Improvements Agreement by failing to complete construction on time, and HCA has also been aware of Oceanside's default on the Phase 1 and Phase 2 Agreements for "many years." Id. ¶¶ 29, 32. Nevertheless, AMIC alleges, neither The Club nor HCA notified AMIC of the default until March

4

2010, when AMIC received their letters demanding that AMIC perform under the surety bonds.  Id. ¶¶ 32-35.  AMIC requested indemnity and collateral from Oceanside, but Oceanside has refused.  Id. ¶¶ 37-40.

AMIC alleges that Oceanside controls The Club and HCA. Id. ¶¶ 4-6.  AMIC alleges that Oceanside, The Club, and HCA do not act as separate entities, but are instead merely alter egos of each other that divert their assets among themselves to concentrate assets in one entity and liabilities in another.  Id. ¶¶ 9-10.  According to AMIC, The Club and HCA delayed in declaring Oceanside in default because Oceanside controlled The Club and HCA.  Id. ¶¶ 29, 32.  AMIC alleges that Oceanside is now in default on its obligations to its lenders, and its financial condition has "deteriorated."  Id. ¶¶ 28-29, 32.

B.    Procedural Background.

AMIC and Defendants filed their actions on the same day --April 5, 2010.  See Compl., ECF No. 1; Compl., attached as Exh. H to Decl. of Sandra A. Edwards, ECF No. 32-10 (hereinafter, "State Court Compl.").  In their state case, The Club and HCA have sued Oceanside for breach of the Club Improvements Agreement, breach of the Phase 1 Agreement, and breach of the Phase 2 Agreement.  State Court Compl. ¶¶ 28-39.  The state lawsuit filed by The Club and HCA also includes claims against AMIC for breach of the performance bonds associated with the Club

Improvements Agreement, the Phase 1 Agreement, and the Phase 2 Agreement.  Id. ¶¶ 40-54.  The Club and HCA seek damages for breach of contract, judgment in the amount of the penal sum of the bonds, costs, and fees.  Id. at 9-10.

AMIC's original federal court complaint named only The Club and HCA as Defendants, but alleged that Oceanside had operating control of The Club and HCA and that each was an alter ego of the other.  The complaint sought a declaration that the bonds have been discharged, exonerated, or otherwise limited because of the conduct of The Club, HCA, and Oceanside.  ECF No. 1.  On April 26, 2010, AMIC amended its complaint.  The current version adds Oceanside as a Defendant on the original declaratory relief cause of action, and includes four new additional claims solely against Oceanside.  See FAC.

On the same day, AMIC removed the state court action to federal court.  See Civ. No. 10-00241 JMS/LEK.  Judge Michael Seabright remanded the case to state court on October 26, 2010, for lack of consent by all the defendants.  See Order Adopting the Findings & Rec. to Grant in Part and Deny in Part Pls.' Mot. for Remand & Def. Oceanside Partner's Mot. to Remand, attached as Exh. B to The Club & HCA's Submission of Uncited Authorities in Support of Mot. to Dismiss FAC, ECF No. 69, 2010 WL 4386741 (D. Haw. Oct. 26, 2010).

AMIC asserts five claims in the present action. First, AMIC claims that Oceanside breached the 1999 and 2001 indemnity agreements by failing to deposit collateral or pay AMIC's costs associated with The Club and HCA's performance bond demands, in the amount of approximately $142,000 as of March 31, 2010. FAC ¶¶ 41-66. Second, AMIC asserts a claim for specific performance, requesting that the court compel Oceanside to indemnify AMIC pursuant to the indemnity agreements and deposit collateral in the amount of $142,000 for future losses and expenses. Id. ¶¶ 67-76. Third, AMIC asserts what it calls a quia timet claim against Oceanside, alleging that Oceanside is likely to transfer its assets to evade its obligations to AMIC. FAC ¶¶ 77-82. Fourth, AMIC seeks a declaration that Oceanside must post collateral and must discharge AMIC from liability on the bonds. Id. ¶¶ 83-86. Finally, AMIC asserts a claim for declaratory relief against all Defendants, asking the court to determine whether AMIC's liability has been fully or partially discharged based on Defendants' alleged failure to notify AMIC and on other limits of liability that inhere in the bonds. Id. ¶¶ 87-96.

The Club and HCA now move to dismiss the FAC, or, in the alternative, to stay the case pending resolution of the state court lawsuit. Defs.' The Club at Hokuli`a, Inc. & Hokuli`a Cmty. Ass'n, Inc.'s Mot. to Dismiss FAC For Declaratory Relief & Damages (Docket No. 26), or, Alternatively, to Stay the Case, ECF

No. 32 ("Hokuli`a Defs.' Mot."). Oceanside moves to dismiss the breach of contract cause of action and to stay the remaining causes of action pending resolution of the state court case. Def. 1250 Oceanside Partners' Mot. to Dismiss & Stay the Case 2, ECF No. 34 ("Oceanside's Mot.").

III.      STANDARD.

Review on a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is normally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If the district court relies on materials outside the pleadings in making its ruling, ordinarily it must treat the motion to dismiss as one for summary judgment and give the nonmoving party an opportunity to respond. Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908. If adjudicative facts or matters of public record meet the requirements of Rule 201 of the Federal Rules of Evidence, a court may judicially notice them in deciding a motion to dismiss. Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001); see Fed.

R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

IV.     ANALYSIS.

        A.    Requests for Judicial Notice.

        The Club and HCA ask the court to take judicial notice of the existence of underlying state court litigation, various filings by the litigants, and judicial orders issued by that court.  Defs.' The Club at Hokuli`a, Inc. & Hokuli`a Cmty. Ass'n, Inc.'s Request for Judicial Notice, ECF. No. 32-16.  Pursuant to Rule 201 of the Federal Rules of Evidence, this court may take judicial notice of papers filed in state court and of state court orders.  See Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998).  The state court documents identified by The Club and HCA are relevant to the present matter.  Therefore, the court grants the request for judicial notice.

        B.    Abstention Under *Colorado River*.

        Defendants argue that the court should decline to exercise jurisdiction over this case to allow the state court action to proceed.  Hokuli`a Defs.' Mot. at 12-30; Oceanside's

9

Mot. at 5-10.  Ordinarily, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).  The "general rule" is "that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction."  <u>Id.</u> (quotation and internal punctuation omitted). The Supreme Court has long recognized, however, that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding . . . do nevertheless exist."  <u>Id.</u> at 818.

A federal court's decision whether to dismiss or abstain from a case "rest[s] on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  <u>Id.</u> at 817 (quoting <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183 (1952)).  "[W]e emphasize that our task . . . is not to find some substantial reason for the <u>exercise</u> of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under <u>Colorado River</u> to justify the <u>surrender</u> of that jurisdiction."  <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25-26 (1983).

10

Colorado River enumerated four factors that courts may consider in determining whether "considerations of wise judicial administration" outweigh the duty to exercise federal jurisdiction: (1) whether the state court was the first to assume jurisdiction over a property; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. 424 U.S. at 818. In Moses Cone, 460 U.S. at 23, the Supreme Court added two more considerations: (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court proceeding can adequately address the rights of the federal plaintiff. The Ninth Circuit has also added--and repeatedly emphasized--another factor: (7) whether the exercise of jurisdiction would encourage forum-shopping. Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 297 (9th Cir. 1996); see, e.g., Holder v. Holder, 305 F.3d 854, 870-71 (9th Cir. 2002); Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir. 1989).

Here, Defendants argue, despite the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332, concerns of wise judicial administration, particularly the existence of parallel, duplicative state litigation, should cause the court to refrain from hearing the case. This court is not persuaded. This case does not present the "exceptional circumstances" that

would justify a decision by this court to decline to exercise its jurisdiction.

Most importantly, the state court proceeding does not fully address AMIC's rights. Colorado River, 424 U.S. at 818; Moses Cone, 460 U.S. at 23. This court recognizes that the declaratory relief cause of action is largely duplicative of the state court action, in which The Club and HCA allege that AMIC has breached its surety obligations under the bonds. See State Court Compl. ¶¶ 40-54. Here, however, AMIC additionally seeks breach of contract damages based on Oceanside's alleged failure to deposit collateral or pay AMIC's costs associated with HCA and The Club's performance bond demands. FAC ¶¶ 56-66. A ruling on whether AMIC's liability under the surety bonds has been fully or partially discharged will not resolve whether Oceanside owes AMIC for this alleged breach of the indemnity agreements.

Defendants warn that, if this court hears this case, duplicative, piecemeal litigation will result. Hokuli`a Defs.' Mot. at 14-15; Oceanside's Mot. at 7. The Ninth Circuit does not interpret Colorado River that broadly. In United States v. Morros, 268 F.3d 695 (9th Cir. 2001), the court held that, to satisfy the "avoidance of piecemeal litigation factor" present in Colorado River, there must be "evidence of a strong federal policy that all claims should be tried in the state courts." Id. at 706-07; cf. Colorado River, 424 U.S. at 819 (explaining that

congressional legislation had indicated a clear federal policy against piecemeal adjudication in the water rights matter before the Court).  The Ninth Circuit warns that abstaining whenever a state court might "obviate the need for federal review by deciding factual issues in a particular way . . . would 'make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case.'"  Morros, 268 F.3d at 706 (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)).

Piecemeal litigation does not seem problematic here. This case appears to present ordinary issues relating to contract law.  Moreover, Defendants have drawn the court's attention to no substantive issues that the state court has resolved following the remand.  This court concludes that concerns about piecemeal litigation do not weigh against the exercise of federal jurisdiction in this case.  Accord Morros, 268 F.3d at 707.

The Club and HCA also argue that AMIC is forum shopping in seeking rulings in this court.  Hokuli`a Defs.' Mot. at 15-16. However, as the complaints were filed nearly simultaneously in the federal and state courts, this factor favors neither party. The court sees no basis for concluding on the present record that AMIC's valid choice of a federal forum in which to be heard constitutes forum shopping.  Accord Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 804 (9th Cir. 2002) (no evidence of

forum shopping merely because one party prefers to litigate in a federal forum while the other prefers a state forum); cf. Nakash, 882 F.2d at 1417 (finding evidence of forum shopping when plaintiffs brought a federal suit only after becoming dissatisfied with the state court litigation, which had proceeded for over three years).

Nor do the other Colorado River factors counsel in favor of abstention.  Even though the state court has heard previous cases involving property disputes at Hokuli`a, there is no analogous property at issue here, such that the state court could be said to have assumed control over a res.  Cf. 40235 Wash. Street Corp. v. Lusardi, 976 F.2d 587, 588-89 (9th Cir 1992) (per curiam) (first prong of Colorado River test applies to proceedings in rem or quasi in rem).  The federal forum, in Honolulu, is not particularly inconvenient as compared with the state forum, on the Big Island of Hawaii.  The state and federal courts obtained jurisdiction within hours of each other.  And the lack of a federal question does not, standing alone, merit abstention.

In sum, this is not one of the "exceedingly rare," "exceptional cases" to which the Colorado River doctrine applies. Smith v. Cent. Ariz. Water Conservation Dist., 418 F.3d 1028, 1033 (9th Cir. 2005).  Cf. Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1195 (9th Cir. 1991) (vacating

stay of "unexceptional commercial dispute"); Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990) (vacating stay in a case that presented merely "ordinary contract and tort issues").

C.   *Brillhart/Wilton* Standard.

In the alternative, Defendants argue that the court has discretion under the Declaratory Judgment Act to decline jurisdiction over this action.  Hokuli`a Defs.' Mot. at 21; Oceanside's Mot. at 5.  AMIC argues that discretion under the Declaratory Judgment Act does not apply to its complaint because AMIC asserts claims for breach of contract, specific performance, and quia timet in addition to its claims for declaratory relief. The court, in part, agrees.

The Declaratory Judgment Act vests district courts with discretion to exercise jurisdiction over claims for declaratory relief.  Under 28 U.S.C. § 2201, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  This is an authorization, but not a command.  See Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); see also Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to

considerations of practicality and wise judicial administration.").

A federal court's broad discretion to abstain in declaratory relief actions empowers it to stay or dismiss such actions in favor of pending state court proceedings involving the same issues and parties. Wilton, 515 U.S. at 287-89; Gov't Employees Ins. Co. v. Dizol ("Dizol"), 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (federal courts should consider whether maintaining the declaratory action will result in duplicative litigation; courts should decline to entertain "reactive declaratory actions"). Usually, it is uneconomical and vexatious for a federal court to proceed in a declaratory judgment suit when there is an exact parallel state proceeding. Smith v. Lenches, 263 F.3d 972, 978 (9th Cir. 2001) (quoting Brillhart, 316 U.S. at 495). However, a pending state court action does not require a district court to refuse federal declaratory relief. See Dizol, 133 F.3d at 1225.

In this circuit, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Id. If the coercive claims can exist independently of any request for declaratory relief, the exercise

16

of federal jurisdiction is mandatory, provided <u>Colorado River</u>

constraints do not otherwise apply. <u>See</u> <u>Snodgrass v. Provident</u>

<u>Life & Accident Ins. Co.</u>, 147 F.3d 1163, 1167 (9th Cir. 1997).

The Ninth Circuit has defined an "independent" claim as

one that "could be litigated in federal court even if no

declaratory claim had been filed." <u>United Nat'l Ins. Co. v. R&D</u>

<u>Latex Corp.</u> ("<u>R&D Latex</u>"), 242 F.3d 1102, 1113 (9th Cir. 2001).

The test is not whether one claim can be resolved without

disposing of the legal issues raised in the other claim. <u>Id.</u> at

1112. Instead, the question is whether the court would have

"ha[d] subject matter jurisdiction over the monetary claim alone,

and if so, whether that claim must be joined with one for

declaratory relief." <u>Id.</u>

For example, in <u>R&D Latex</u>, the court held that the

district court erred in declining jurisdiction over an insured's

suit for a declaration of coverage based on the insurer's

counterclaim for reimbursement of its defense costs. 242 F.3d at

1112-13. The court determined that the insurer's right of

reimbursement existed as a standalone cause of action under

California law, cognizable in an action for contract, tort or

assumpsit, depending on the circumstances. <u>Id.</u> at 1113-14. The

court found no reason that a reimbursement claim had to be joined

with a claim for declaratory relief, and on that basis held the

claims to be independent. <u>Id.</u> at 1113.

17

By contrast, the Ninth Circuit has held that insurers' counterclaims for contribution are not independent of the core declaratory relief claim. See Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 755 (9th Cir. 1996), overruled in part on other grounds by Dizol, 133 F.3d at 1227; Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 801 (9th Cir. 1995), overruled in part on other grounds by Dizol, 133 F.3d at 1227.

       1.   Jurisdiction Over Claims Against Oceanside.

Under the standards above, exercise of the court's jurisdiction is not discretionary as to Oceanside. AMIC alleges, at the very least, a colorable breach of contract claim that is independent of its requests for declaratory relief. See FAC ¶¶ 41-66.[1] The breach of contract claim alleges that Oceanside breached its indemnity agreements by failing to deposit collateral or pay AMIC's costs associated with The Club and HCA's performance bond demands. FAC ¶¶ 56-66. This court's subject matter jurisdiction over the breach of contract claim is not in

---

[1] The court is uncertain as to whether quia timet, FAC ¶¶ 77-82, is a viable cause of action in Hawaii, as the most recent Hawaii state appellate published ruling on the availability of a bill quia timet appears to have been in 1926. See Jellings v. Baldwin, 29 Haw. 494 (1926). Moreover, "specific performance," FAC ¶¶ 67-76, is not itself a claim, but rather an equitable remedy available to a party who was damaged by another's breach of contract. See, e.g., Ueoka v. Szymanski, 107 Haw. 386, 114 P.3d 892 (2005) (granting specific performance for breach of real estate contract). Even ignoring these portions of the FAC, however, AMIC does assert an independent, albeit relatively small, cause of action for breach of contract.

dispute.  Moreover, applying basic contract law, AMIC could have brought a breach of contract claim against Oceanside without either of the declaratory relief claims.  See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Haw. 286, 303-04, 141 P.3d 459, 476-77 (2006) (breach of contract claim requires plaintiff to allege existence and breach of a contract).  AMIC makes the basic assertion that Oceanside is liable to it as a matter of contract law.[2]  Therefore, AMIC's breach of contract claim "invoke[s] the virtually unflagging obligation of the district court to hear jurisdictionally sufficient claims."  Snodgrass, 147 F.3d at 1167 (internal quotations and citations omitted); see also Dizol, 133 F.3d at 1226 n.6 (claim for breach of contract provides an independent basis for federal diversity jurisdiction).  The court is required to retain jurisdiction over the declaratory judgment claim in this matter.

North Pacific Seafoods, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA, 2008 WL 53180 (W.D. Wash. Jan. 3, 2008), cited by Defendants in their briefing, is inapposite. The Washington district court was obligated under R&D Latex to apply Washington law to determine whether the monetary relief

_____

[2]Whether AMIC's indemnity claim is meritorious or not is a separate issue from whether it is independent of the declaratory relief claim.  This is not the time to address the merits of that claim.  This court is well aware of the complexity and impact of the claim and will not address its merits absent full briefing. See generally Exec. Risk Indem., Inc. v. Pac. Educ. Servs., Inc., 451 F. Supp. 2d 1147, 1163-64 (D. Haw. 2006).

claims were independent of the declaratory relief claim. See R&D Latex, 242 F.3d at 1113-14. The court also read the claims in that case as pled as part of the declaratory relief claim. N. Pac. Seafoods, Inc., 2008 WL 53180, at *4. Hawaii law controls here. AMIC has alleged an independent breach of contract claim under Hawaii law sustainable even if no declaratory relief clam had ever been filed.

The presence of additional claims for relief requires the court to exercise jurisdiction unless there are "exceptional circumstances" presented. See Dizol, 133 F.3d at 1226 n.6; Colorado River, 424 U.S. at 813. Because the court has determined that this case does not present exceptional circumstances justifying abstention from the court's duty to exercise its jurisdiction, dismissal or a stay is not warranted as to Oceanside.

2.    Jurisdiction Over Claim Against The Club and HCA.

The Club and HCA are situated differently from Oceanside in that AMIC alleges a single cause of action against The Club and HCA. The fifth cause of action, against all Defendants, requests declaratory judgment as to the extent of AMIC's liability on the surety bonds. FAC ¶¶ 87-96. Because there are no coercive causes of action against these Defendants, the court's jurisdiction is discretionary under 28 U.S.C. § 2201 and Brillhart. As litigation between AMIC and Oceanside will

remain, the court exercises its discretion to retain the claim against The Club and HCA.

The court recognizes that the fifth cause of action duplicates and could eventually lead to a conflicting ruling with a judgment in the state court on The Club and HCA's breach of contract claims in the underlying case, in which The Club and HCA allege that AMIC has breached its surety obligations under the bonds.  See State Court Compl. ¶¶ 40-54.  However, the court does not see the benefit of dismissing The Club and HCA from this litigation because their dismissal would not actually eliminate the declaratory relief cause of action (or any other cause of action).

Even without the presence of The Club and HCA, AMIC would be entitled to a judicial determination of its obligations under the surety bonds with respect to Oceanside, which is a party to the surety bonds.  This determination would require a ruling on AMIC's theory that Oceanside, The Club and HCA are alter egos.  Depending on how this question is resolved, either AMIC or the other Defendants would no doubt seek to relitigate AMIC's obligations as to The Club and HCA in state court. Dismissal of The Club and HCA would not, therefore, avoid duplicative litigation at all.  Defendants' motions to dismiss or stay on these grounds are denied.

D.   <u>Misjoinder of Claims Against Oceanside.</u>

Oceanside argues that it should be dismissed from this case because AMIC misjoined Oceanside with the other two Defendants.  Oceanside's Mot. at 3-4.  According to Oceanside, as AMIC's claims against it arise out of the alleged failure to perform on the indemnity agreements rather than the development contracts, AMIC's complaint does not assert a right to relief "jointly, severally, or in the alternative" as to the three Defendants and does not assert a claim arising out of the same "transaction, occurrence, or series of occurrences."  <u>Id.</u> at 4; <u>see</u> Fed. R. Civ. P. 20.  Oceanside misinterprets the requirements of Federal Rule of Civil Procedure 20 as to joinder.

Rule 20 provides for permissive joinder of defendants when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  The Supreme Court has noted that the Federal Rules of Civil Procedure encourage "entertaining the broadest possible scope of action consistent with fairness to the parties."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 724 (1966).  Therefore, "joinder of claims, parties and remedies is strongly encouraged."  <u>Id.</u>  AMIC's claims against Oceanside arise

22

out of the same transactions as do its claims against The Club and HCA, *i.e.*, the execution of the development agreements and issuance of the corresponding surety bonds, as well as the subsequent conduct of all three Defendants in allegedly failing to apprise AMIC of Oceanside's delayed progress over a period of years.  *See* FAC ¶¶ 15-35.

Moreover, AMIC's claims raise common questions of law and fact as to the relationship among Defendants.  *See, e.g.*, FAC ¶¶ 4-6 (alleging that Oceanside controls The Club and HCA), 9-10 (alleging that Oceanside, The Club, and HCA do not act as separate entities, but are instead alter egos of each other that divert their assets among each other to concentrate assets in one entity and liabilities in another), 29, 32 (alleging that The Club and HCA delayed in declaring Oceanside in default because Oceanside controlled The Club and HCA).

Because the claims arise out of the same transaction and raise common questions of law and fact, Defendants are properly joined in this lawsuit under Federal Rule of Civil Procedure 20.  *Cf.* *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (under Rule 20, district court erred in dismissing developers from suit because plaintiff's asserted right to relief arose out of a common transaction, an agency's allegedly illegal approval of the developers' projects, and a common legal question included the

validity of the approval).  Oceanside's motion to dismiss on this ground is denied.

> E.   Whether AMIC's Claims Against Oceanside Represent an Improper Attempt by a Surety to Compete With Obligees for the Principal's Assets.

Oceanside argues that AMIC's claims against it should be dismissed because AMIC, as a surety, may not compete with The Club and HCA for Oceanside's assets until Oceanside and AMIC have "fully discharged their obligations" to The Club and HCA. Oceanside's Mot. at 11-13, (citing Jenkins v. Nat'l Surety Co., 277 U.S. 258 (1928), and Am. Surety Co. v. Westinghouse Elec. Mfg. Co., 296 U.S. 133 (1935)).  Oceanside's authority on this point is inapposite.  Jenkins relates to allocation of assets among insolvent debtors, 277 U.S. at 266, and AMIC does not allege that Oceanside is insolvent.  Accord Am. Surety Co., 296 U.S. at 136-38 (surety not entitled to compete with creditor for estate of insolvent debtor).  The motion to stay on this ground is denied.

V.      CONCLUSION.

For the reasons stated above, the motions to dismiss and to stay are DENIED.  The motions to stay are denied without prejudice to the parties' ability to seek a stay if later developments in this case or the underlying state court case so warrant.

24

At oral argument, the court questioned the parties regarding the status of the underlying state litigation. The parties represented that, on January 4th, 2011, the state court is scheduled to hear motions regarding referral to alternative dispute resolution, as well as consolidation of the state court case with another state court case involving the County of Hawaii. The court orders AMIC to provide the court with a letter explaining the outcome of the motions in the state court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 21, 2010.



  /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

AMIC v. The Club at Hokuli`a; Civil No. 10-00199 SOM/KSC; ORDER DENYING MOTIONS TO DISMISS AND STAY