IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   vs.<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation; 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership; TEXTRON FINANCIAL CORPORATION, a Delaware corporation; RED HILL 1250, INC., a Washington corporation; and OCD, LLC, a Hawaii limited liability company,<br><br>        Defendants.<br>_____<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; and HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation,<br><br>        Counter and Cross-<br>        claimants,<br><br>   vs.<br><br>AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, and 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership,<br><br>        Counter and Cross-<br>        defendants.<br>_____ | CIVIL NO. 10-00199 SOM/KSC<br><br>ORDER DENYING AMERICAN MOTORISTS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE GOLF COURSE |

ORDER DENYING AMERICAN MOTORISTS
INSURANCE COMPANY'S MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT REGARDING THE GOLF COURSE</u>

I.     <u>INTRODUCTION.</u>

In this contract dispute, American Motorists Insurance Company ("AMICO"), a surety on various performance bonds, has filed suit in federal district court against the bonds' principal, 1250 Oceanside Partners ("Oceanside"), and obligees, The Club at Hokuli`a, Inc. ("The Club"), and Hokuli`a Community Association ("HCA"). AMICO seeks a declaration regarding the extent of its liability on bonds with penal sums totaling approximately $50 million.[1] AMICO also seeks a declaration of the parties' rights and duties with respect to indemnity agreements, issued between Oceanside and AMICO, in conjunction with the bonds. Finally, AMICO brings claims against Oceanside for breach of contract for alleged defaults on the indemnity agreements, for <u>quia timet</u>, and for specific performance. The Club and HCA have counterclaimed against AMICO for breach of its performance bonds, and have also cross-claimed against Oceanside for breach of contract.

AMICO now moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking a

---

[1] Additional Defendants, not involved in the present motions, include Oceanside's partners, Red Hill 1250, Inc., and OCD, LLC, along with Textron Financial Corporation, which was added as an additional obligee to the surety bonds in 2006.

2

determination that AMICO is not liable for the portion of one of the performance bonds that insures completion of the golf course. AMICO argues that Oceanside completed the golf course in 2002, and that, under the terms of the bond, completion of the golf course releases AMICO from its obligation to insure completion. However, because the parties dispute material facts related to this issue--most importantly, whether the golf course is, in fact, complete, AMICO's motion is denied.

II.         FACTUAL AND PROCEDURAL BACKGROUND.

Around 1990, Oceanside bought 1,550 acres of land on the Big Island of Hawaii for a luxury residential community development to be named "Hokuli'a." Aff. Stephen Beatty ("Beatty Aff.") ¶ 6, ECF No. 210-1.[2] Oceanside planned to develop various recreational amenities for Hokuli'a homeowners, including a golf course, golf maintenance facility, clubhouse, beach activity center, and tennis courts. Id. ¶ 8. Oceanside formed and organized HCA as Hokuli'a's homeowners' association. Id. ¶ 7. Oceanside formed and organized The Club to administer and manage Hokuli`a's golf club. Id.

---

[2]The Club has filed "Evidentiary Objections and Request to Strike Portions of the Affidavits of Stephen Beatty and Rex Y. Fujichaku." See ECF No. 253. Because the court is denying AMICO's motion for partial summary judgment, it sees no need to rule on the substance of The Club's objections or strike any portion of the contested affidavits. Moreover, AMICO belatedly submitted additional authentication of some exhibits to which The Club objects. ECF No. 301. The objections are overruled and the request is denied as moot.

In September 1999, Oceanside contracted with The Club to build recreational facilities at Hokuliʻa.  See Aff. Rex Y. Fujichaku ("Fujichaku Aff.") Exh. C ("Club Improvements Agreement"), ECF No. 210-5.  The original plan included a golf course, a beach activity center, a golf clubhouse, four tennis courts, and a golf maintenance facility.  See Club Improvements Agreement at 1-2; see also Fujichaku Aff. Exh. D (Synopsis of Proposed Plans and Estimated Costs of the Promised Recreational Amenities), ECF No. 210-6.  The Club Improvements Agreement was later amended and superseded by an Amended Agreement, dated June 6, 2001, that reflected delays in estimated completion dates and the addition of a spa to the beach facility.  Fujichaku Aff. Exh. B (Amended Club Improvements Agreement), ECF No. 210-4.  The Amended Club Improvements Agreement listed the golf course with an estimated completion date of October 2001, and estimated cost of $17,100,000.  Id. at 2.

The Amended Club Improvements Agreement required Oceanside to execute a surety bond in favor of The Club.  Id. at 4.  AMICO issued a bond (the "Amended Club Improvements Bond") on or about June 6, 2001, in the penal sum of $28.8 million, to cover the cost of constructing the facilities in the Amended Club Improvements Agreement, including the golf course.  Fujichaku Aff. Exh. A, ECF No. 210-3.  The Amended Club Improvements Bond provides that "the maximum exposure under this bond for each

component of the Club Recreational Facilities is the amount relating thereto as set forth herein." Id. at 2. The Amended Club Improvements Bond lists the various facilities, their estimated completion dates, and their estimated costs. Id. at 1. The Bond lists the golf course's estimated cost as $17.1 million. Id.

AMICO filed this suit on April 5, 2010. Among other claims, AMICO seeks a declaratory judgment against all Defendants, including the following relief:

> 1. A judicial declaration regarding the rights and obligations of the parties in accordance with the Club and HCA Bonds. In particular, AMICO desires a judicial declaration[] as follows:
>
> a. That the Club and HCA Bonds have been fully or partially discharged on account of DEFENDANTS' conduct . . . .

Second Amended Compl. ("SAC") at 47-48, ECF No. 144.

AMICO, The Club, and HCA have filed motions for partial summary judgment. ECF Nos. 202, 209. In the present motion, AMICO seeks a ruling that it has no liability as surety for completion of the golf course under the Amended Club Improvements Bond because The Club has allegedly admitted that the golf course is already complete. In a companion order, the court denies The Club and HCA's motion for partial summary judgment on the issue of whether the surety bond agreements permit AMICO to satisfy its

5

obligation by reimbursing funds rather than advancing them, financing Oceanside, or completing the project itself.

III.     STANDARD.

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment on either all or part of its claims and defenses. Fed. R. Civ. P. 56(a). Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary

judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial.  Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  By contrast, when the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party.  Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Id.  The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.  See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999).  On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts.  See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

7

IV.     ANALYSIS.

   A. Whether AMICO's Liability for the Portion of the Bond Attributed to the Golf Course is a Proper Issue for Summary Judgment.

Before it turns to the merits of AMICO's motion, the court addresses a threshold challenge to the propriety of the motion. The Club argues that AMICO is not entitled to bring a motion under Rule 56 for partial summary judgment with respect to its liability for the portion of the Amended Club Improvements Bond attributable to the golf course. According to The Club, this issue is not one of the "claims or defenses" asserted in the Complaint. Opp. 19-22.

The court does not agree. As noted above, in its Second Amended Complaint, AMICO seeks the following relief:

> 1. A judicial declaration regarding the rights and obligations of the parties in accordance with the Club and HCA Bonds. In particular, AMICO desires a judicial declaration[] as follows:
>
> a.  That the Club and HCA Bonds have been fully or partially discharged on account of DEFENDANTS' conduct . . . .

SAC at 47-48. This motion seeks a ruling that AMICO is released from its liability as surety for completion of the golf course under the Amended Club Improvements Bond because Oceanside has allegedly completed the golf course. Such a determination is covered by the language above.

8

B. Whether the Golf Course is Complete.

AMICO argues that it is not obligated to pay the $17.1 million attributed to construction of the golf course because Oceanside has stated, on multiple occasions, that the golf course is complete. Mot. 19-26. According to AMICO, this admission releases AMICO from its liability under the Amended Club Improvements Bond as to the golf course component. Mot. 16-19.

In support of its motion, AMICO cites several examples of "admissions" made by Oceanside. For example, in 2009, Oceanside's general counsel submitted to a representative of the County of Hawaii an Annual Report that stated that "The Golf Course was completed in July of 2002." Fujichaku Aff. Exh. G (2009 Annual Report) at 3, ECF No. 210-9; see also Depo. Daryn Arai 23:7-25, Fujichaku Aff. Exh. L (confirming that the County received multiple annual reports from Oceanside stating that the golf course was finished), ECF No. 210-14.

Oceanside's 2003 audited Consolidated Financial Statements stated that the "Club amenities include an 18-hole private golf course, maintenance facilities, dining pavilion, and the related infrastructure surrounding the golf course." Fujichaku Aff. Exh. M at 14, ECF No. 210-15. Oceanside's bond placement agent emailed the Consolidated Financial Statements to Kemper Insurance, AMICO's predecessor, in 2004. See id. at 1. The bond placement agent also stated in an email in 2005, "The

9

golf course is complete," id. Exh. N, ECF No. 210-16, and stated in a deposition that Oceanside had told him the golf course was completed, id. Exh. O (Depo. David Jensen, Jan. 12, 2011) 174:20-175:22, ECF No. 210-17. The agent stated in his deposition that he had played the course. Id. at 206:19-207:1.

In 2007, an executive of The Lyle Anderson Company, Inc., which controlled the Oceanside partnership until 2008, stated in an email to the bond agent's assistant, "The golf course has been complete for some time. It might be possible to reduce the size of the bond." See Fujichaku Aff. Exh. P, ECF No. 210-18. In 2008, a director of Oceanside and a director of The Club indicated in a Q&A document regarding Hokuli'a's status that "[t]he Directors view the golf course as one of the community's primary assets and the reason many of the members joined the Club. Consequently, the Directors are committed to maintaining the course at a very high level." Id. Exh. R at 6, ECF No. 210-20.

Finally, in response to AMICO's requests for admissions, The Club admitted that "all 18 holes of the Golf Course are currently in use." Id. Exh. H at 17, ECF No. 210-10.

The court finds that this evidence suffices to meet AMICO's burden as the movant on its motion for partial summary judgment. Miller, 454 F.3d at 987. However, the court also finds that The Club has submitted sufficient evidence to the

contrary to create a genuine issue of material fact regarding whether AMICO's liability associated with the golf course is discharged.

The main difficulty with AMICO's position is that its motion rests almost exclusively on evidence of statements made by Oceanside, not The Club. To the extent The Club disagrees with Oceanside's assessment, AMICO has not demonstrated that The Club should be bound by the statements made by Oceanside. The Club asserts that, while the golf course is playable, it is far from complete. In support of its position, The Club submits an expert declaration indicating that various items remain incomplete, including: (1) construction of golf cart paths; (2) installation of irrigation and well controls; (3) construction of permanent restrooms; (4) relocation of utility controls for irrigation; and (5) landscaping between golf fairways and adjacent lots. See Decl. James Gomes ("Gomes Decl.") ¶ 9, ECF No. 251-1. The expert estimates the remaining cost of completion at $22.4 million. Id. ¶¶ 10-11. The Club submits a declaration by a board member of HCA that highlights the same outstanding items. Decl. Kirk Lazaruk ("Lazaruk Decl.") ¶ 8, ECF No. 251-2.[3] The Club also

---

[3] AMICO objected to consideration of the Gomes and Lazaruk declarations, arguing that the declarations are not credible because The Club did not attach to Gomes's declaration copies of the materials he relied on and because Lazaruk's declaration is uncorroborated. Reply 2-9. The court overrules AMICO's objections because the stated objections go to the weight, not the admissibility, of the proffered evidence.

points out that Oceanside's bond agent, in his deposition, opined with respect to his communications with Oceanside on the subject of the golf course that "'complete' can mean different things." Fujichaku Aff. Exh. Q (Depo. David Jensen, Mar. 28, 2011) 391:1-2, ECF No. 210-19. Turning to the 2008 statements by a director of The Club in a Q&A document that "[t]he Directors view the golf course as one of the community's primary assets and the reason many of the members joined the Club" and "the Directors are committed to maintaining the course at a very high level," the court is not persuaded that these statements are equivalent to a pronouncement that the golf course is complete. Finally, although The Club's responses to requests for admission admit that the golf course is playable, the responses explicitly deny that the golf course is complete. Fujichaku Aff. Exh. H at 17.

The Club's evidence is consistent with its position that the golf course is playable but not complete. Consequently, even if Oceanside has admitted that the golf course is complete, without an explanation of why such statements preclude The Club from asserting otherwise, AMICO's reliance on Oceanside's admissions is insufficient to warrant summary judgment.

At the hearing on this matter, AMICO asserted that the court should attribute Oceanside's statements to The Club because The Club and Oceanside were operated jointly during the relevant timeframe. AMICO directed the court to Oceanside's 2003

Consolidated Financial Statements, which were filed on behalf of Oceanside and The Club, and noted that the Club Improvements Agreement and the Amended Club Improvements Agreement were signed by one person on behalf of both The Club and Oceanside.  See Fujichaku Aff. Exhs. B-C, M.  AMICO also sought leave to supplement its motion with additional evidence that Oceanside's statements should be imputed to The Club.

As the moving party, AMICO bears the burden of proving that it is entitled to judgment as a matter of law.  AMICO has not briefed its legal argument that the general contract principles of agency or alter ego apply in determining the enforcement of surety agreements.  Nor has AMICO established its factual argument that Oceanside is an alter ego of The Club.  The evidence cited by AMICO may be relevant to the question of alter ego, but does not alone persuade the court that, as a matter of law, statements by Oceanside regarding its development obligations are identical to statements by The Club.  Moreover, the court sees no reason to grant AMICO's request to supplement its motion.  As it stated at the hearing, the court typically assumes that a party seeking summary judgment is relying on a record full enough to establish the lack of factual disputes. AMICO remains free to bring a new summary judgment motion that properly supports the alter ego theory it asserted at the hearing, provided a new motion would be timely.

In denying AMICO's motion, the court emphasizes that it is not issuing a ruling that the golf course is or is not actually "complete," as contemplated by the various parties' agreements. Such a ruling would turn on definitions contained in the parties' own agreements, as well as, potentially, arguments regarding construction trade usage or the parties' course of dealing. AMICO's motion rests exclusively on its argument that it is entitled to summary judgment because The Club and Oceanside have admitted the golf course is complete; essentially, AMICO seeks to estop The Club from arguing otherwise. Because there are genuine issues of fact regarding whether The Club has admitted that the golf course is complete, AMICO is not entitled to summary judgment on that ground.[4]

V. CONCLUSION.

For the reasons stated above, AMICO's motion for partial summary judgment is DENIED.

---

[4] Because there is a disputed question of fact, the court need not reach legal issues raised by The Club in its Opposition regarding (1) whether AMICO cannot be released from its bond obligations as long as The Club has not agreed to the release, see Opp. 11-16, and (2) whether AMICO is estopped from seeking to deny liability by its collection of premiums on the full amount of the Amended Club Improvements Bond, even after the golf course was allegedly completed in 2002, see Opp. 16-19.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 11, 2011.



                     /s/ Susan Oki Mollway
                     Susan Oki Mollway
                     Chief United States District Judge

AMICO v. The Club at Hokuli`a; Civil No. 10-00199 SOM/KSC; ORDER DENYING AMERICAN MOTORISTS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE GOLF COURSE