IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   vs.<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation; 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership; TEXTRON FINANCIAL CORPORATION, a Delaware corporation; RED HILL 1250, INC., a Washington corporation; and OCD, LLC, a Hawaii limited liability company,<br><br>        Defendants.<br>_____<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; and HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation,<br><br>        Counter and Cross-<br>          claimants,<br><br>   vs.<br><br>AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, and 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership,<br><br>        Counter and Cross-<br>          defendants.<br>_____ | CIVIL NO. 10-00199 SOM/KSC<br><br>ORDER DENYING THE CLUB AND HCA'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING AMICO'S ABILITY TO SATISFY ITS OBLIGATIONS THROUGH REIMBURSEMENT |

ORDER DENYING THE CLUB AND HCA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING AMICO'S ABILITY TO
SATISFY ITS OBLIGATIONS THROUGH REIMBURSEMENT

I.          INTRODUCTION.

In this contract dispute, American Motorists Insurance Company ("AMICO"), a surety on various performance bonds, has filed suit in federal district court against the bonds' principal, 1250 Oceanside Partners ("Oceanside"), and the bonds' obligees, The Club at Hokuli`a, Inc. ("The Club"), and Hokuli`a Community Association ("HCA"). AMICO seeks a declaration regarding the extent of its liability on bonds with penal sums totaling approximately $50 million.[1] AMICO also seeks a declaration of the parties' rights and duties with respect to indemnity agreements, issued between Oceanside and AMICO, in conjunction with the bonds. Finally, AMICO brings claims against Oceanside for breach of contract for alleged defaults on the indemnity agreements, for quia timet, and for specific performance. The Club and HCA have counterclaimed against AMICO for breach of its performance bonds, and have also cross-claimed against Oceanside for breach of contract.

The Club and HCA now move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure,

---

[1] Although they are not involved in the present motions, additional Defendants include Oceanside's partners, Red Hill 1250, Inc., and OCD, LLC, along with Textron Financial Corporation, which was added as an additional obligee to the surety bonds in 2006.

2

seeking a determination that AMICO may not satisfy its liability under the performance bonds by requiring The Club and HCA to first complete construction and then reimbursing The Club and HCA for their expenditures. The court denies The Club and HCA's motion because the surety agreements contemplate reimbursement of funds by AMICO.

II.     FACTUAL AND PROCEDURAL BACKGROUND.

Around 1990, Oceanside bought 1,550 acres of land on the Big Island of Hawaii for a luxury residential community development to be named "Hokuli`a." Aff. Stephen Beatty ¶ 6, ECF No. 210-1. Oceanside planned to develop various recreational amenities for Hokuli`a homeowners, including a golf course, golf maintenance facility, clubhouse, beach activity center, and tennis courts. Id. ¶ 8. Oceanside formed and organized HCA as Hokuli`a's homeowners' association. Id. ¶ 7. Oceanside formed and organized The Club to administer and manage Hokuli`a's golf club. Id.

In September 1999, Oceanside contracted with The Club to build recreational facilities at Hokuli`a. See Decl. Phil Edlund Supp. The Club & HCA's Mot. Partial Summ. J. ("Edlund Decl.") Exh. A ("Club Improvements Agreement"), ECF No. 203-2. The original plan included a golf course, a beach activity center, a golf clubhouse, four tennis courts, and a golf maintenance facility. See Club Improvements Agreement at 1-2.

The Club Improvements Agreement was later amended and superseded by an Amended Agreement, dated June 6, 2001. Edlund Decl. Exh. B ("Amended Club Improvements Agreement"), ECF No. 203-3.

In September 1999, Oceanside contracted with HCA to build improvements to the Hokuli`a subdivision. Edlund Decl. Exh. E ("Phase 1 Agreement"), ECF No. 203-6. Oceanside agreed to install electric lines, telephone lines, and utility ductline-cable lines to serve the subdivision, as well as an electrical substation and a shoreline park. Id. at 1-2. Oceanside also agreed to complete revegetation of the residential lots. Id.

In June 2001, Oceanside contracted with HCA to build additional improvements to the Hokuli`a subdivision. Edlund Decl. Exh. G ("Phase 2 Agreement"), ECF No. 203-8. Oceanside agreed to install additional electric lines, telephone lines, and utility ductline-cable lines to serve the subdivision. Id. at 1-2. Oceanside again agreed to complete revegetation of the residential lots. Id.

The original and Amended Club Improvements Agreements, the Phase 1 Agreement, and the Phase 2 Agreement (collectively, the "Agreements") each required Oceanside to execute a surety bond in favor of The Club or HCA. See Club Improvements Agreement at 3; Amended Club Improvements Agreement at 4; Phase 1 Agreement at 3; Phase 2 Agreement at 2. Accordingly, AMICO issued a bond on September 16, 1999 (the "Club Improvements

Bond"), and a superseding bond on June 6, 2001 (the "Amended Club Improvements Bond"), in the penal sum of $28.8 million, to cover the cost of constructing the facilities in the Amended Club Improvements Agreement. Edlund Decl. Exhs. C-D, ECF Nos. 203-4, 203-5. On September 16, 1999, AMICO issued a bond (the "Phase 1 Bond") in the penal sum of $17.4 million to cover the cost of completing the improvements contemplated by the Phase 1 Agreement. Edlund Decl. Exh. F, ECF No. 203-7. Finally, on June 13, 2001, AMICO issued a bond (the "Phase 2 Bond") in the penal sum of $4.6 million to cover the cost of completing the improvements contemplated by the Phase 2 Agreement. Edlund Decl. Exh. H, ECF No. 203-9.

On August 29, 2001, by way of separate bond riders, Deere Credit Inc. ("Deere"), one of Oceanside's lenders, was added as a dual obligee to the Amended Club Improvements Bond, the Phase 1 Bond, and the Phase 2 Bond. Edlund Decl. Exhs. M-O ("Deere Riders"), ECF Nos. 203-15, 203-16, 203-17. In 2005, Deere was deleted as a dual obligee from each of the three bonds. Decl. Daniel D. Domogala, Jr., Supp. The Club & HCA's Mot. Partial Summ. J. ("Domogala Decl.") Exhs. A-C, ECF Nos. 203-18, 203-19, 203-20.

In the Agreements and the surety bonds, Oceanside committed to assure the completion of its contracted-for improvements in filings under the federal Interstate Land Sales

5

Full Disclosure Act. See Amended Club Improvements Agreement at 3; Phase 1 Agreement at 3; Phase 2 Agreement at 3; Amended Club Improvements Bond at 1; Phase 1 Bond at 1; Phase 2 Bond at 1. In the Agreements, Oceanside also committed to complete the improvements through filings "under the laws of the State of Hawaii." See Amended Club Improvements Agreement at 3-4; Phase 1 Agreement at 3; Phase 2 Agreement at 3.

AMICO filed this suit on April 5, 2010. Among other claims, AMICO seeks a declaratory judgment against all Defendants, asking the court to determine:

> That the CLUB and HCA Bonds are indemnity bonds that give AMICO the right but not the obligation to take over and complete the Project upon a default by OCEANSIDE. Should AMICO choose not to exercise that right, the CLUB and HCA must cause the Project to be completed and then seek reimbursement from OCEANSIDE and/or AMICO, subject to any other defenses AMICO may have to the claim brought by the CLUB and HCA.

Second Amended Compl. ("SAC") at 49, ECF No. 144.

AMICO, The Club, and HCA have filed motions for partial summary judgment. ECF Nos. 202, 209. In the present motion, The Club and HCA seek a determination that AMICO is not entitled to fulfill its surety obligations by reimbursing The Club and HCA for work completed by them, but rather must "assure completion" by advancing funds to The Club and HCA for the allegedly incomplete improvements, financing Oceanside's performance, or taking over and itself completing the improvements. Mot. 29-30.

6

In a companion order, the court denies AMICO's motion for partial summary judgment on the issue of whether AMICO may be discharged from liability associated with the golf course.

III.     STANDARD.

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment on either all or part of its claims and defenses. Fed. R. Civ. P. 56(a). Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must

satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial. Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)). By contrast, when the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts.

See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

IV.     ANALYSIS.

In general, "a suretyship relationship exists whenever a person becomes responsible for the debt of another." State *ex. rel.* Ameron, Inc. v. Tradewinds Elec. Serv. & Contracting, Inc., 80 Haw. 218, 223, 908 P.2d 1204, 1209 (1995) (brackets and citation omitted). State law governs the interpretation of surety bonds. See Contractors Equip. Maint. Co. *ex rel.* U.S. v. Bechtel Hanford, Inc., 514 F.3d 899, 903 (9th Cir. 2008). In Hawaii, surety contracts are subject to the rules governing simple contracts. Van Dusen v. G.S. Shima Contracting, Inc., 4 Haw. App. 261, 664 P.2d 753, 754 (Ct. App. 1983). The "goal when interpreting a contractual provision is to determine the intention of the parties." Pancakes of Haw., Inc. v. Pomare Props. Corp., 85 Haw. 300, 304-05, 944 P.2d 97, 101-02 (Ct. App. 1997).

As in a standard contractual relationship, the terms of the surety contract govern the sureties' obligations and rights. See Mayer v. Alexander & Baldwin, Inc., 56 Haw. 195, 198, 532 P.3d 1007 (1975) ("There is no principle of law better settled than that a surety has the right to stand upon the very terms of his contract.") (quoting Territory v. Pac. Coast Cas. Co., 22 Haw. 446, 450 (1915)). When the meaning of specific contractual

9

terms is unclear, a court may consider extrinsic evidence, such as evidence of surrounding circumstances and the subsequent acts and conduct of the parties. Stewart v. Brennan, 7 Haw. App. 136, 143, 748 P.2d 816, 821 (Ct. App. 1988). However, contractual terms are to be interpreted according to their plain, ordinary meaning, and a court should look no further than the four corners of the document to determine whether an ambiguity exists. United Public Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Haw. 127, 141, 149 P.3d 495, 509 (2006). Mere disagreement by the parties as to the meaning of a contract or its terms does not render clear language ambiguous. Foundation Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Haw. 487, 496, 78 P.3d 23, 32 (2003); see also Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 298, 875 P.2d 894, 915 (1994) (noting that the court "must respect the plain terms of the insurance policy and not create ambiguity where none exists") (brackets omitted), amended on reconsideration by 76 Haw. 453, 879 P.2d 558 (1994). The subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Haw. 286, 298, 141 P.3d 459, 471 (2006).

The starting point of the court's analysis is, therefore, the language of the bonds. The Amended Club

Improvements Bond is set forth in three parts.[2] The first part states the bond's general obligation, binding AMICO jointly and severally with Oceanside to pay the bond's penal sum to The Club:

> [W]e, 1250 OCEANSIDE PARTNERS . . . as subdivider or principal, and AMERICAN MOTORISTS INSURANCE COMPANY, of ILLINOIS, as surety, are held and firmly bound into THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation, hereinafter called the Club or obligee, its successors and assigns in the full and just sum of Twenty-Eight Million Eight Hundred Thousand DOLLARS ($28,800,000), for the payment of which to the said obligee, its successors and assigns, well and truly to be made, we do hereby bind ourselves and our respective heirs, executors and administrators, assigns and/or successors, jointly and severally . . . .

Amended Club Improvements Bond at 1. The bond then sets forth various conditions of the obligation, including Oceanside's obligations to The Club under the Amended Club Improvements Agreement:

> THE CONDITION OF THIS OBLIGATION IS SUCH THAT:
>
> . . .
>
> WHEREAS, <u>the Subdivider [Oceanside] has entered into an Amended Agreement with the Club dated the 6th day of June, 2001 to provide the funds necessary to assure completion of the Club Recreational</u>

---

[2]The other surety bonds contain substantially identical language with respect to the rights and obligations of the subdivider and principal (Oceanside), the surety (AMICO), and the bonds' respective obligees (The Club and HCA). See Phase 1 Bond at 1-3; Phase 2 Bond at 1-3. For convenience, the court's analysis cites solely to the Amended Club Improvements Bond.

11

>           Facilities and Golf Maintenance Facility in
>           <u>Hokuli`a</u> within the time specified therein as
>           set forth above, or such extension as may be
>           mutually agreed upon, <u>and upon default, the
>           Club may cause the same to be completed and
>           recover the costs thereof from the principal
>           [Oceanside] and surety [AMICO]</u>, which said
>           agreement is made part of this bond the same
>           as though set forth herein;

<u>Id.</u> at 2.  Finally, the bond provides that, if Oceanside meets its obligations, AMICO's obligation under the Amended Club Improvements Bond is void:

>           NOW, THEREFORE, if the above-bounden
>           principal [Oceanside] shall fully and
>           faithfully coordinate and assure completion
>           of the Club Recreational Facilities and Golf
>           Maintenance Facility according to the terms
>           of said agreement within Hokuli`a on or
>           before the dates estimated for completion of
>           the various components thereof set forth
>           herein and in the Amended Agreement . . .
>           this obligation shall be void; otherwise it
>           shall be and remain in full force and
>           effect . . . .

<u>Id.</u>

Contrary to The Club and HCA's argument, under the terms of the bond, Oceanside and AMICO do not have identical obligations.  The bond specifically provides, as a condition of the general obligation, that Oceanside bears the responsibility to complete the listed improvements.  Indeed, several of the bond's conditions indicate that Oceanside alone is liable for "completion" of the listed improvements:

- "said principal[] . . . will commit in Purchase Contracts with purchasers of lots to assure completion of certain

12

> > Club Recreational Facilities by certain dates"
>
> - "Subdivider has agreed to assure completion of an initial Golf Maintenance Facility"
>
> - "Subdivider has entered into an Amended Agreement with the Club dated this 6th day of June, 2001, to provide the funds necessary to assure completion of the Club Recreational Facilities and Golf Maintenance Facility"
>
> - "said principal has committed to assure by bond the completion of the Club Recreational Facilities"
>
> - "NOW, THEREFORE, if the above-bounden principal shall fully and faithfully coordinate and assure completion of the Club Recreational Facilities and Golf Maintenance Facility . . . this obligation shall be void . . . ."

Amended Club Improvements Bond at 1-2. The bond then specifies "certain dates" by which Oceanside "will commit . . . with purchasers of lots to assure completion of certain Club Recreational Facilities," id. at 1, and provides that, "upon default, the Club may cause the same to be completed and recover the costs thereof from the principal and surety," id. at 2. Accordingly, the bond first sets out the obligations of the principal and subdivider, Oceanside, and then sets out separately a contingency "upon default," for which AMICO is liable.

The only part of the agreement specifying the actions AMICO must take states that The Club may "recover the costs" of completion from AMICO. Id. at 2. It does not say that AMICO is

13

required to complete the improvements.  Indeed, the court finds nothing in the language of the bonds supporting The Club's position that requiring The Club and HCA to "complete the Improvements and then seek reimbursement from AMIC would defeat the very purpose of the Bonds."  Mot. 25.  Even if Oceanside had intended this language to mean something other than what its plain meaning indicates, it is well settled that "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties."  Stanford Carr Dev. Corp., 111 Haw. at 298, 141 P.3d at 471 (quoting Standard Mgmt., Inc. v. Kekona, 99 Haw. 125, 134, 53 P.3d 264, 273 (Ct. App. 2001)).

      The only coextensive obligation set out in the agreement is that Oceanside and AMICO "are held and firmly bound into [The Club] . . . in the full and just sum of Twenty-Eight Million Eight Hundred Thousand DOLLARS ($28,800,000), for the payment of which to the said obligee, its successors and assigns, well and truly to be made, we do hereby bind ourselves and our respective heirs, executors and administrators, assigns and/or successors, jointly and severally."  See Amended Club Improvements Bond at 1.  This language provides that Oceanside and AMICO are jointly and severally liable for the amount of the

bond itself.  It does not require AMICO to proactively assure completion of the listed improvements in concert with Oceanside.[3]

Although the court believes the language of the bonds clearly permits reimbursement by AMICO, the court briefly notes the extrinsic documents The Club and HCA rely on to interpret the bonds.  The various Agreements between Oceanside and The Club or HCA constitute one such set of documents.  The Club and HCA argue that the Agreements, like the surety bonds, state in several places that Oceanside is committing to complete the various projects at issue. Mot. 18-20, 21-23.  However, as discussed above, the mere statement in the Agreements that Oceanside is liable for completion does not automatically require AMICO, as surety, to step into Oceanside's shoes and complete the project itself.  The Agreements do not provide for this, other than to indicate that Oceanside will secure its own commitment to assure completion of the various improvements "by a good and sufficient surety bond."

Similarly, none of the filings made by Oceanside pursuant to federal or state law indicates an agreement that AMICO, the surety, would itself take over Oceanside's performance

---

[3]The language of the Deere Riders provide additional support for the court's conclusion.  These riders, which were executed by The Club and HCA in 2001, and were part of the bonds until 2005, explicitly provide that "the subject bond is an indemnity bond" and that it is "conditioned upon proof of damages."  Each Deere Rider was incorporated by reference to each respective bond.  See Edlund Decl. Exhs. M—O ("[t]o be attached and form a part of [each] contract bond . . . .").

15

obligations should Oceanside default.  The bond is the only document before this court that spells out the nature of AMICO's obligations, and its language specifically states that AMICO may discharge its liability through reimbursement.

The court is mindful of The Club and HCA's concern that they may be unable to make the payments required to complete the Hokuli`a facilities.  Nevertheless, it is the bond agreement that governs AMICO's liability as surety and, by its plain language, it limits AMICO's obligation to reimbursement.

V.      CONCLUSION.

For the reasons stated above, The Club and HCA's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 11, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

AMICO v. The Club at Hokuli`a; Civil No. 10-00199 SOM/KSC; ORDER DENYING THE CLUB AND HCA'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING AMICO'S ABILITY TO SATISFY ITS OBLIGATIONS THROUGH REIMBURSEMENT

16