IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  vs.<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation; 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership; TEXTRON FINANCIAL CORPORATION, a Delaware corporation; RED HILL 1250, INC., a Washington corporation; and OCD, LLC, a Hawaii limited liability company,<br><br>        Defendants.<br>_____<br><br>THE CLUB AT HOKULI`A, INC., a Hawaii nonprofit corporation; and HOKULI`A COMMUNITY ASSOCIATION, INC., a Hawaii nonprofit corporation,<br><br>        Counter and Cross-<br>        claimants,<br><br>  vs.<br><br>AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, and 1250 OCEANSIDE PARTNERS, a Hawaii limited partnership,<br><br>        Counter and Cross-<br>        defendants.<br>_____ | CIVIL NO. 10-00199 SOM/KSC<br><br>ORDER DENYING THE CLUB AND HCA'S MOTION FOR RECONSIDERATION |

## ORDER DENYING THE CLUB AND HCA'S MOTION FOR RECONSIDERATION

I.     INTRODUCTION AND FACTUAL BACKGROUND.

On August 25, 2011, Defendants and Counterclaimants The Club at Hokuli`a, Inc. ("The Club"), and Hokuli`a Community Association ("HCA") brought a motion for partial summary judgment as to Plaintiff and Counterdefendant American Motorists Insurance Company's ("AMICO") sixth cause of action. See The Club/HCA's Mot. Partial Summ. J. ("MPSJ") 1, ECF No. 202; Second Amended Compl. ("SAC") ¶ 110 & p.49, ECF No. 144. In its prayer for judgment on its sixth cause of action, AMICO sought a judicial declaration:

> That the CLUB and HCA bonds are indemnity bonds that give AMICO the right but not the obligation to take over and complete the Project upon a default by OCEANSIDE. Should AMICO choose not to exercise that right, the CLUB and HCA must cause the Project to be completed and then seek reimbursement from OCEANSIDE and/or AMICO, subject to any other defenses AMICO may have to the claim brought by the CLUB and HCA.

SAC p.49. In their MPSJ, The Club and HCA asserted that, as a matter of law, AMICO was not entitled to a declaratory judgment "that the bonds require [T]he Club and HCA to first perform and then seek reimbursement." Mem. Supp. MPSJ 2, ECF No. 202-1. The Club and HCA relied on various documents, including the surety bonds themselves, the underlying agreements, and state and federal filings, to establish that the surety bonds did not

2

require The Club and HCA to perform and then seek reimbursement. See Mem. Supp. MPSJ 17-18, 27.

Although AMICO disputed the relevance of these documents, it did not dispute the documents' contents or their authenticity. See AMICO's Obj. to The Club/HCA's Sep. Concise Stmt. Mat'l Facts Supp. MPSJ, ECF No. 256. Similarly, The Club and HCA did not dispute the additional facts AMICO presented to the court in opposition to The Club and HCA's motion, although they argued that the evidence--specifically, the issuance of certain bond riders and the fact that Oceanside, not AMICO, provided the surety bond language--was not relevant. See The Club/HCA's Obj. to AMICO's Concise Stmt. Facts Supp. AMICO's Opp. to MPSJ, ECF No. 290. The parties therefore presented the court with a dispute only as to law, a matter suitable for resolution via summary judgment. See Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011) ("Where, as here, the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment.").

The court agreed with The Club and HCA that resolution by summary judgment was appropriate based on the evidence provided, but rejected The Club and HCA's position, holding instead that the surety bonds unambiguously limited AMICO's

3

obligation to reimbursement.  See Order Denying The Club and HCA's Motion for Partial Summary Judgment Regarding AMICO's Ability to Satisfy Its Obligations Through Reimbursement, ECF No. 361 [hereinafter "August 11 Order"].  The court determined that the surety bonds obligated Oceanside to "assure completion" of the project, but did not bind AMICO to the same obligation.  Id. at 10-14.  Rather, the bonds bound AMICO jointly and severally with Oceanside to insure the various improvements for the amounts of the bonds' penal sums, but permitted AMICO to fulfill this obligation by reimbursement.  Id.  The court relied on language in the surety bonds stating that, if Oceanside defaulted on its obligations "to provide the funds necessary to assure completion of [the listed improvements] within the time specified" under the Amended Club Improvements Agreement, the Phase 1 Agreement, or the Phase 2 Agreement, "[The Club or HCA] may cause the same to be completed and recover the costs thereof from the principal and surety."  See id. at 11-13; see, e.g., Amended Club Improvements Bond at 2, ECF No. 203-5.

The court also reviewed the other documents submitted by The Club and HCA, including the various Agreements between Oceanside and The Club or HCA.  August 11 Order at 15-16.  The court noted that these documents required Oceanside to assure completion of the project but did not set forth any duties on AMICO's part.  Id.  Similarly, none of Oceanside's filings

pursuant to federal or state law indicated an agreement that AMICO would itself take over Oceanside's performance obligations upon default. Id.

The Club and HCA now try to carve out a middle ground, arguing that disputed questions of material fact prevented the court from issuing a legal ruling on the question of whether AMICO may fulfill its surety obligations through reimbursement, and that the court's failure to "revise" the August 11 Order to state that the bonds are ambiguous will deny The Club and HCA "their right to trial on the disputed meaning of the bonds, which would constitute a manifest injustice." See Mem. Supp. Mot. for Revision and/or Reconsideration of August 11 Order [Docket 361] ("Mem. Supp. Mot.") 8, ECF No. 385. This novel approach does not square with the facts and argument that The Club and HCA presented to the court on their MPSJ. Because The Club and HCA's motion for reconsideration presents no new facts, no intervening change in law, and no manifest error or law or fact, it is denied.

II.     LEGAL STANDARD.

A motion for reconsideration of an interlocutory order of this court, such as an order on a motion for partial summary judgment, is proper only on the following grounds: (1) discovery of new material facts not previously available; (2) an intervening change in the law; or (3) a manifest error of law or

fact.  See LR60.1; see also Oppenheimer v. L.A. County Flood Control Dist., 453 F.2d 895, 895 (9th Cir. 1972) (per curiam) (denial of motion for partial summary judgment is interlocutory). "Mere disagreement with a previous order is an insufficient basis for reconsideration." White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).  Nor may the reconsideration motion be "based on evidence and legal arguments that could have been presented at the time of the challenged decision." Comeaux v. Hawaii, Civ. No. 06-00341 SOM/BMK, 2007 WL 2300711, at *1 (D. Haw. Aug. 8, 2007).  "Whether or not to grant reconsideration is committed to the sound discretion of the court." White, 424 F. Supp. 2d at 1274 (citing Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003)).

III.    ANALYSIS.

The Club and HCA assert that they are not seeking withdrawal by this court of its denial of The Club and HCA's motion for summary judgment.  The Club & HCA's Mot. for Revision and/or Reconsideration of August 11 Order ("Mot.") 2, ECF No. 385.  They say they are instead asking the court to reconsider or "revise" the August 11 Order.  Id.  According to The Club and HCA, that Order determined that the surety bonds are indemnity bonds.  See Mem. Supp. Mot. 5.  Further, they say that this determination was improper because: (1) no one sought such a

ruling, id. at 4-5; (2) there is a question of fact as to this issue, id. at 5-8, 13-14; and (3) the underlying contracts between Oceanside and The Club and HCA demonstrate that the bonds are performance bonds, not indemnity bonds, id. at 9-12.

> A. The Club and HCA Sought a Ruling on AMICO's Ability to Satisfy Its Obligations Under the Surety Bond Via Reimbursement.

As their first ground for reconsideration, The Club and HCA assert:

> By ruling that the bond language to the effect that "the Club may cause the same to be completed and recover the costs thereof from the principal and surety" means that the bonds are indemnity bonds (limiting the surety's obligation to reimbursement) rather than performance bonds (requiring the surety to assure completion) the Court raises, and then summarily resolves, a significant contractual ambiguity that was not before the Court.

Mem. Supp. Mot. 4-5 (emphases added). The Club and HCA further assert that "[t]he effect of this ambiguity in the bonds is to create an issue of fact that was not briefed by the parties, and as to which no evidence was presented to the Court on the Motion." Id. at 5.

The Club and HCA mischaracterize the August 11 Order. They appear to be labeling as an "ambiguity" the issue of whether the surety bonds are "indemnity" or "performance" bonds, with AMICO saying the bonds are "indemnity" bonds, and The Club and HCA saying the bonds are "performance" bonds. Although The Club

7

and HCA's motion does argue in places that the bonds are not indemnity bonds, see, e.g., Mem. Supp. Mot. 28-31, the court agrees that The Club and HCA did not expressly ask the court to denominate the bonds as either "indemnity bonds" or "performance bonds." The August 11 Order refers in passing to the bonds as performance bonds, but does not expressly rule that the bonds are characterized as such. See August 11 Order 2-3.

What is clear is that The Club and HCA sought partial summary judgment on the question of whether AMICO's obligation under the surety bonds was limited to reimbursement. That is, although what label to assign to the bonds was not expressly before the court, the court was asked to decide what the bonds required AMICO to do.

Even a cursory glance at The Club and HCA's briefing on their motion establishes that they sought such a ruling. The very first pages of the MPSJ assert that, as a matter of law, AMICO is not entitled to a declaratory judgment "that the bonds require [T]he Club and HCA to first perform and then seek reimbursement." Mem. Supp. MPSJ 2. Instead, "[a]s a matter of law," the memorandum argues, "[T]he Club and the HCA are not first required to complete these improvements and only then seek reimbursement from AMIC." Id. Similarly, the first portion of the "Argument" section of The Club and HCA's memorandum bears the following heading: "As a Matter of Law The Bonds Do Not Require

8

The Club/HCA To Complete The Improvements And Then Seek Reimbursement From AMIC, But Rather The Bonds Obligate AMIC To Perform Without Requiring The Club/HCA First To Complete The Improvements." Mem. Supp. Mot. 14. Finally, the reply brief reiterates that The Club and HCA "are seeking a judgment as to AMIC's contractual obligations under the Bonds should it be found liable. Specifically, a judgment on AMIC's contention that the Club and HCA must first complete the Improvements before AMIC has any obligation to perform." MPSJ Reply 8, ECF No. 292. The Club and HCA placed the issue of whether AMICO was entitled to fulfill its surety obligations via reimbursement squarely before the court, and the August 11 Order resolved The Club and HCA's motion by ruling that AMICO's obligation is limited to reimbursement. See August 11 Order 3, 6, 16.

    B.    The Club and HCA Asserted that "No Questions of Material Fact" Prevented Resolution of Their Motion.

This court routinely denies motions for summary judgment brought on issues that turn on disputed questions of fact, even though one party (or, occasionally, both parties) believe that only questions of law are presented for the court to rule on. See, e.g., Order Denying AMICO's Mot. for Partial Summ. J. Regarding Golf Course, ECF No. 360; see also Ortega v. Hutchings, No. 2:08-cv-00588 SOM, 2011 WL 3813281 (E.D. Cal. Aug. 26, 2011) (denying unopposed motion for summary judgment), Rodriguez v. Gen. Dynamics Armament & Tech. Prods., Inc., 696 F.

Supp. 2d 1163, 1184-85 (D. Haw. 2010) (genuine issue of material fact as to whether defense contractor's predecessor manufactured mortar cartridge according to all government requirements precluded summary judgment on contractor's government contractor defense in negligence and strict liability action), aff'd, 627 F.3d 1259 (9th Cir. 2010). In this case, for example, if the language of the surety bonds were ambiguous as to AMICO's obligations, extrinsic evidence as to what the parties understood at the time they prepared the bonds might be relevant and might raise a question of fact that would preclude summary judgment. See Stewart v. Brennan, 7 Haw. App. 136, 143, 748 P.2d 816, 821 (Ct. App. 1988) (When the meaning of specific contractual terms is unclear, a court may consider extrinsic evidence, such as evidence of surrounding circumstances and the subsequent acts and conduct of the parties); see, e.g., Seascape Dev., LLC v. Fairway Capital, LLC, Civ. No. 10-00301 JMS/RLP, 2011 WL 1134296, at *7-*8 (D. Haw. Mar. 23, 2011) (denying motion for summary judgment in contract dispute because meaning of words in disputed provision was "uncertain" and holding that parol evidence of parties' intent would be considered).

However, whether a contract is ambiguous is a question of law, and it is the language of the surety bonds themselves that provides the starting point for determining whether such an ambiguity exists. Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir. 1997); United Public Workers, AFSCME, Local 646,

10

AFL-CIO v. Dawson Int'l, Inc., 113 Haw. 127, 141, 149 P.3d 495, 509 (2006). In this case, the court concluded that the bonds were not ambiguous. See August 11 Order 10-15. Indeed, The Club and HCA never argued that the bond language was ambiguous. To the contrary, their summary judgment motion repeatedly contended that the surety bonds' language unambiguously required AMICO to "assure completion" and prohibited AMICO from fulfilling its surety obligation by reimbursement:

> There are no issues of material fact in dispute. As a matter of law, AMIC is not entitled to the declaratory judgment it seeks. The Club and HCA are entitled to partial summary judgment on AMIC's claim and prayer for relief for a determination that the bonds require the Club and HCA to first perform and then seek reimbursement.

Mem. Supp. Mot. 2; see also id. at 1 ("there are no issues of material fact in dispute"); MPSJ 1 (same); Mem. Supp. Mot. 15 ("As explained below, there is no genuine issue of material fact concerning AMIC's obligations under the Bonds.").

In the absence of ambiguity (or claims of fraud, duress, or mutual mistake), extrinsic evidence regarding the meaning of an incorporated agreement is inadmissible. State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 324, 978 P.2d 753, 762 (1999). The evidence submitted by The Club and HCA in support of their Motion for Reconsideration is a post-hoc attempt to create ambiguity that fails to persuade the court that

the bonds are actually ambiguous or that any "manifest injustice" otherwise resulted from the August 11 Order.

The first piece of evidence is a brief excerpt from the deposition of AMICO's expert, William Cheatham.  <u>See</u> Decl. Jeffrey A. Sykes ("Sykes Decl.") Exh. A, ECF No. 385-2.  This two-page document is unhelpful.  First, neither Cheatham nor the deposing attorney explains what bond is being discussed, a crucial piece of information if the court is to rely on the testimony in determining whether a bond is ambiguous.  <u>See generally</u> <u>id.</u> at 86-87.  Second, the phrase being used by the attorney questioning Cheatham, "The Club may complete," does not appear in any of the surety bonds.  If The Club and HCA purport to parse the terminology of the bonds in any detailed manner, the court is unsure why they do not rely on the actual wording of the surety bonds.

Even if the court assumes that the phrase "may complete" is being used as shorthand for the phrase, "The Club may cause the same to be completed" (which does appear in the Amended Club Improvements Bond), Cheatham, in saying that he did not understand the phrase, provides no detail regarding what aspect of the phrase "may complete" was problematic.  <u>Id.</u> at 86-87.  Cheatham does not mention the terms "indemnity" or "performance."  Nor does he actually state that the words "The Club may complete" are ambiguous.  <u>See</u> <u>id.</u>  At most, Cheatham states that, when he saw the words, he wanted to read the

12

underlying agreements, but he believed those agreements were specific to the obligations of only the developer. Id. at 86. Cheatham appears to think the word "ambiguous" is not the right word to describe the phrase, and settles on saying that the language was "a little unclear." Id. at 87. This testimony does not persuade this court that it should find the bonds ambiguous in any relevant respect.

The Club and HCA also supply two expert reports in support of their position that the surety bonds require AMICO to ensure completion of the projects. See Sykes Decl. Exh. C at 4, Exh. D at 2, ECF Nos. 385-4, 385-5. The Club and HCA acknowledge that these reports were available at the time The Club and HCA filed their motion for summary judgment, but argue that they failed to submit the reports "because the Motion raised only issues of law, not issues of fact." Mot. 8 n.4. This court's order in no way introduces factual disputes. While these experts' opinions support The Club and HCA's position that the language of the bonds should be read as requiring AMICO to step into Oceanside's shoes and complete the project if Oceanside failed to do so, the experts' construction of the bonds cannot create ambiguity out of clear contractual language. See Foundation Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Haw. 487, 497, 78 P.3d 23, 33 (2003). What the clear language of a contract requires is a matter for a court, not an expert witness.

C. The Club and HCA Fail to Demonstrate that the Surety Bonds in Ameron or Fireman's Fund Resemble the Bonds at Issue in this Case, or that the Underlying Agreements Enlarge AMICO's Obligations Beyond the Scope of the Surety Bonds.

Neither Ameron Inc. v. Fireman's Fund Insurance Co., Civ. No. 94-00487 HG, 1995 WL 904999 (D. Haw. Jan. 25, 1995), nor Island Insurance Co. v. Hawaiian Foliage & Landscape, Inc., 288 F.3d 1161 (9th Cir. 2002), cited by The Club and HCA, persuade the court that reconsideration is appropriate. See Mem. Supp. Mot. 9-12. The Club and HCA assert that the relevant language of the surety bonds in those cases is "largely identical" to the bonds here. Id. at 11. But these cases do not address the import of the language central to the court's holding that AMICO's obligation may be fulfilled via reimbursement--that, "upon default, [The Club/HCA] may cause the same to be completed and recover the costs thereof from the principal and surety" (emphasis added).

Nor do the holdings of these cases materially assist The Club and HCA. The dispute in Ameron centered on whether the obligee's claim against the surety was time-barred. 1995 WL 904999, at *3-*5. No party argued that the surety was obligated to assure completion of the underlying project by stepping in and paying for the project up front. See id. at *1-*2. Rather, the obligee on the bond sought only reimbursement of amounts it had paid to the principal, as well as payment of an arbitration award owed by the principal. See id. at *1, *6-*7. Island Insurance

14

concerned the scope of the surety's liability, not the manner and method of its payment. By contrast, The Club and HCA's motion for partial summary judgment related solely to the manner and method of payment and did not address any of AMICO's defenses regarding scope.

Finally, the court did not err in holding that the surety bonds were the only documents before the court that spelled out the nature of AMICO's obligations. See August 11 Order 16. As the Order explained, neither the language of the underlying agreements nor any of the other extrinsic documents presented by The Club and HCA contains any language expanding AMICO's obligations beyond those defined in the surety bonds. The Club and HCA fail to demonstrate that language committing Oceanside to complete the projects should be interpreted as requiring AMICO to step into Oceanside's shoes and complete the project itself in the event of Oceanside's default. See August 11 Order 15-16. The Club and HCA asserted their argument to the contrary in their initial motion, Mem. Supp. MPSJ 18-28, and their continued disagreement with the court's conclusion, Mem. Supp. Mot. 12, is not justification for reconsideration. White, 424 F. Supp. 2d at 1274.

V. CONCLUSION.

For the reasons stated above, The Club and HCA's motion for reconsideration is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 20, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge