RUSH MOORE LLP
A Limited Liability Law Partnership

CHERYL A. NAKAMURA        3007-0
REGINAULD T. HARRIS       7516-0
SHIMPEI OKI               9391-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii  96813-3862
Telephone No.: (808) 521-0400
Email:   cnakamura@rmhawaii.com
         rharris@rmhawaii.com
         soki@rmhawaii.com

LOUISE STOUPE (*Pro hac vice*)
TERESA M. SUMMERS (*Pro hac vice*)
Morrison & Foerster LLP
Shin Marunouchi Building
1-5-1 Marunouchi
Chiyoda-ku, Tokyo 100-6529
Japan
Tel: 011-81-3-3214-6522
Email:   lstoupe@mofo.com
         tsummers@mofo.com

Attorneys for Defendant/Cross-Claimant OCD, LLC

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, | ) Civil No. CV 10-00199 SOM-KSC )  )  **DEFENDANT/CROSS-CLAIMANT** |
| Plaintiff, | ) **OCD, LLC'S EVIDENTIARY** ) **OBJECTIONS AND REQUEST TO** ) **STRIKE THE EXHIBITS TO THE** |
| vs. | ) **FUJICHAKU DECLARATION** ) **INCLUDING THE SEPTEMBER 9,** ) **2011 EXPERT REPORT OF** ) **THOMAS UENO AND TO STRIKE** |

| | |
|---|---|
| THE CLUB AT HOKULI'A, INC., a Hawai'i nonprofit corporation; HOKULI'A COMMUNITY ASSOCIATION, INC., a Hawai'i nonprofit corporation; 1250 OCEANSIDE PARTNERS, a Hawai'i limited partnership; TEXTRON FINANCIAL CORPORATION, a Delaware corporation; RED HILL 1250, INC., a Washington corporation; and OCD, LLC, a Hawaii limited liability company,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **PORTIONS OF THE SQUATRITO DECLARATION [DKT. NO. 446]; DECLARATION OF SHIMPEI OKI; EXHIBITS "C" – "M"; CERTIFICATE OF SERVICE** |
| OCD, LLC, a Hawaii limited liability company,<br><br>    Cross-claimant,<br><br>    vs.<br><br>1250 OCEANSIDE PARTNERS, a Hawai'i limited partnership and RED HILL 1250, INC., a Washington corporation,<br><br>    Cross-defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <u>Hearing:</u><br>Date: October 17, 2011<br>Time: 9:00 am<br>Judge: Honorable Susan Oki Mollway<br><br>Judge: Hon. Susan Oki Mollway<br>Trial: January 10, 2012 |

tk-424173

**DEFENDANT/CROSS-CLAIMANT OCD, LLC'S EVIDENTIARY
OBJECTIONS AND REQUEST TO STRIKE THE EXHIBITS TO THE
FUJICHAKU DECLARATION INCLUDING THE SEPTEMBER 9, 2011
EXPERT REPORT OF THOMAS UENO AND TO STRIKE PORTIONS OF
THE SQUATRITO DECLARATION [DKT. NO 446]**

Defendant/Cross-Claimant OCD, LLC ("OCD"), by and through its counsel,

Rush Moore LLP, objects to the exhibits to the Declaration of Rex Y. Fujichaku

(the "Fujichaku Decl." [DKT No. 446-15]) including the expert report of Thomas

Ueno, dated September 9, 2011 (the "September 9th Ueno Report" [DKT No. 446-

23]), in their entirety and objects to portions of the Declaration of Steve Squatrito

(the "Squatrito Decl." [DKT No. 446-1]) submitted with Plaintiff American

Motorists Insurance Company's ("AMICO") Memorandum in Opposition to

Defendant/Cross-Claimant OCD, LLC's Motion for Summary Judgment [DKT

No. 444] ("Opposition Memorandum" or "Opp. Mem."). The September 9th Ueno

Report was only disclosed after the deadline established by Federal Rule of Civil

Procedure 26 and the Amended Rule 16 Scheduling Order dated June 20, 2011

("Scheduling Order" [DKT No. 224]). Certain statements in and exhibits attached

to the Squatrito Declaration were not authenticated, are not based on personal

knowledge, contain inadmissible hearsay, are based on specialized knowledge

from a witness not disclosed as an expert in accordance with the Scheduling Order,

and state only legal conclusions or speculation with no factual basis. None of the

exhibits attached to the Fujichaku Declaration are based on sworn testimony,

personal knowledge or other foundation, and they are hearsay and assert only speculation.

OCD therefore respectfully requests that this Court strike the evidence for failure to comply with Federal Rules of Civil Procedure 56(c)(4) and the Federal Rules of Evidence ("FRE").

In Section I, OCD lays out the grounds on which it challenges AMICO's evidence.  Sections II-III provide OCD's objections to specific statements and exhibits in the Squatrito Declaration and the Fujichaku Declaration.

## I.   **GROUNDS FOR OBJECTIONS**

Parties must rely only on admissible evidence when supporting or disputing a fact on a motion for summary judgment, and affidavits and declarations "must be made on personal knowledge [and] set out facts that would be admissible in evidence."  *See* Fed. R. Civ. P. 56(c)(2), (4).  The September 9th Ueno Report, attached as Exhibit 21 to the Fujichaku Decl. submitted with AMICO's Opposition Memorandum [DKT 446-23], was disclosed out of time and should therefore be stricken.  Portions of the Squatrito Decl. and attached exhibits are not based on personal knowledge, were not authenticated, contain hearsay, are based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order, and present legal conclusions or speculation without any supporting facts and are therefore not admissible into evidence and may not be

relied upon to oppose summary judgment.  The deposition testimony and exhibits

attached to the Fujichaku Decl. have not been presented as sworn testimony, are

not based on personal knowledge or some other foundational basis sufficient to

establish the cited testimony as asserting more than speculation, and are hearsay.

### A.    The September 9th Ueno Report Should be Stricken in its Entirety Because It was Disclosed Out of Time and is an Out-of-Court Statement Offered to Prove the Truth of the Matters Asserted.

The Federal Rules of Civil Procedure require that "[a] party must make

[expert] disclosures [accompanied by a written report] at the times and in the

sequence that the court orders." *See* Fed. R. Civ. P. 26(a)(2)(B), (D).  The Court's

Amended Rule 16 Scheduling Order dated June 20, 2011 required AMICO to

disclose any expert reports by July 1, 2011.  (Scheduling Order ¶ 11.a [DKT No.

224].)

AMICO and OCD are in the process of meeting and conferring on Mr.

Ueno's numerous expert reports.  (Declaration of S. Oki ("Oki Decl."); Exs. J-M.)

If agreement is not reached on these issues, OCD expects to bring a separate

motion to strike the Ueno reports that were filed in violation of the Court's

Scheduling Order.  In the meantime, the procedural background should elucidate

the basis for OCD's concerns.

On May 16, 2011, Plaintiff AMICO served a 14-page expert report from Mr.

Ueno in accordance with the original scheduling order.  (Oki Decl; Ex. C.)  That

order was then amended, and on July 1, 2011, Plaintiff AMICO served another 24-page report from Mr. Ueno (the "July 1st Ueno Report") on the parties. (Oki Decl.; Ex. D.) There was then a dispute as to when Mr. Ueno's deposition would go forward. Counsel for the Club and HCA insisted that his deposition take place on July 20, 2011. OCD required more time and noticed Mr. Ueno's deposition for August 23, 2011. The Court held a Discovery Conference on July 19, 2011 [DKT No. 309] and the parties agreed that Mr. Ueno's deposition would need to take place on two days. Mr. Ueno's deposition was then taken by the Club and HCA on July 27, 2011. (Oki Decl. at ¶ 4.) On July 26, 2011, AMICO served a one-page correction to the July 1st Ueno Report. (Oki Decl.; Ex. E.) On August 5, 2011, AMICO apparently served two additional reports by Mr. Ueno on some parties. One of the new reports was a one-page correction and the second was a report filled with 12 pages of new opinions. (Oki Decl.; Ex. F.) OCD was never served with these August 5, 2011 reports and did not receive a copy until Mr. Ueno brought them to his deposition taken by OCD on August 23, 2011. Notably, the parties who had already taken Mr. Ueno's deposition (and were not permitted to ask questions on August 23, 2011) had been served with the new August 5, 2011 reports. OCD objected to the late supply of these reports and asked AMICO to confirm those opinions would not be presented in the federal case. (Oki Decl; Exs. J.) That meet and confer process is currently underway. (*See* Oki Decl; Exs. J-M.)

After Mr. Ueno's deposition on August 23, 2011, AMICO served the largest of Mr.
Ueno's reports, a 21-page expert report dated September 9, 2011, which has been
presented in support of AMICO's opposition to OCD's motion for summary
judgment [DKT No. 446-23].

The September 9th Ueno Report filed with AMICO's Opposition
Memorandum does not comply with the Federal Rules or with the Scheduling
Order because it contains new opinions that were not disclosed in the July 1st
Ueno Report and are not in rebuttal to any expert presented by OCD or the other
parties to this litigation.

The Ueno Report cannot be considered a "supplemental" report under Rule
26(e). Parties cannot submit supplemental expert reports that differ significantly
from the original reports, in effect altering or bolstering the parties' arguments.
*See Matsuura v. E.I. du Pont de Nemours & Co.*, Civil Nos. 96-01180 SOM-LEK,
97-00716 SOM-LEK, 99-00660 SOM-LEK, 00-00328 SOM-LEK, 00-00615
SOM-LEK, 2007 U.S. Dist. LEXIS 8949 (D. Haw. 2007); *Wong v. Regents of the
Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005). "Supplementation under the
Rules means correcting inaccuracies, or filling the interstices of an incomplete
report based on information that was not available at the time of the initial
disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998).
Nowhere does the September 9th Ueno Report claim to be correcting inaccuracies,

and nowhere does it claim that it is providing new information that has come to light since the initial report. In fact, it is OCD's understanding that most if not all of the documents cited in Attachment A-1 of his report were produced and available prior to July 1, 2011, when his original report was due. (Oki Declaration at ¶ 9.)

Nor is the September 9th Ueno Report a rebuttal report permitted under paragraph 11.b of the Scheduling Order. The Scheduling Order allows for later disclosure of the "written report of any person who may be called *solely* to contradict or rebut" an opposing party's expert report. (Emphasis added.) The September 9th Ueno Report goes well beyond matters raised by the Expert Report of Dirk von Guenthner dated August 10, 2011 (the "von Guenthner Report").

The 8-page von Guenthner Report (Oki Decl.; Ex. H) addresses only (1) whether Oceanside became a financial risk when Red Hill purchased OCD's general partnership shares (which is a topic addressed in the July 1st Ueno Report), (2) whether partnership distributions were properly made to OCD (again a topic from Mr. Ueno's July 1st report), (3) whether there is any basis for AMICO's claim for $142,750.21 (a topic not addresses by Mr. Ueno in any of his reports), and (4) whether OCD is affiliated with or financially backed by Japan Airlines (again a topic not addressed by Mr. Ueno in any of his reports). (von Guenthner Report 4-7.) In contrast, the 21-page September 9th Ueno Report addresses issues

not raised by the von Guenthner Report beginning on page 8. The first 7 pages address issues already raised in the July 1st Ueno Report and rebutted by the von Guethner Report. These first 7 pages therefore address issues either already disclosed in an expert report, or which could have been disclosed based on evidence in the record prior to July 1, 2011, when disclosures were due.

The fact that the September 9th Ueno Report is not intended to rebut the von Guenthner Report is further evidenced by the facts that (1) the Ueno Report does not mention the von Guenthner Report and (2) the von Guenthner Report is not listed in the documents considered by Mr. Ueno in preparing the report. (September 9th Ueno Report Attachment A-1, "Facts and Data Considered"; *compare with* von Guenthner Report ¶ 6 ("disagree[ing] with Mr. Ueno's conclusions") and Ex. C (listing 7/26/11[1] Report of Thomas Ueno and Exhibits as a document considered in preparing the von Guenthner Report).)

OCD also objects to the September 9th Ueno Report because it is inadmissible hearsay and represents an unsworn statement offered to prove the truth of the matter asserted in violation of FRE 603 and 801-802. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008) (reversing summary judgment ruling based on inadmissible  unsworn expert reports).

---

[1] The report submitted by Mr. Ueno on July 1, 2011 was corrected in a supplemental submission on July 26, 2011.

OCD respectfully requests that this Court strike the September 9th Ueno

Report (Exhibit 21 of the Declaration of Rex. Y. Fujichaku) in its entirety.

**B.** **Portions of the Squatrito Declaration and the Fujichaku Declaration should be Stricken for Lack of Personal Knowledge, for Lack of Authentication, as Hearsay, as Based on Specialized Knowledge, and as Offering Only Legal Conclusions or Speculation Without Supporting Facts.**

    **1.** **Portions of the Squatrito Declaration and Exhibits Attached to the Fujichaku Declaration are not Based on Personal Knowledge or Competent Evidence and should be Stricken.**

Federal Rule of Civil Procedure 56 requires that declarations used to oppose

a motion for summary judgment "be made on personal knowledge." *See* Fed. R.

Civ. P. 56(c)(4); *see also* FRE 602 (requiring evidence supporting a finding that

the witness has personal knowledge of a matter before the witness may testify to

that matter). "A party may object that the material cited to [] dispute a fact cannot

be presented in a form that would be admissible in evidence," so that some other

admissible evidence must be offered where personal knowledge is lacking. *See*

Fed. R. Civ. P. 56(c)(2).

    **2.** **Portions of the Squatrito Declaration and Exhibits Attached to the Fujichaku Declaration are Based on Mere Speculation and should be Stricken.**

Because declarations must be based on personal knowledge, statements that

are based on speculation are inadmissible. *See Hunt-Wesson Foods, Inc. v. Ragu*

*Foods, Inc.*, 627 F.2d 919, 928 (9th Cir. 1980).

**3. Certain Documents Attached to the Squatrito Declaration Lack Authentication and should be Stricken.**

In order to be admissible, documents must be authenticated by a witness who has personal knowledge of a document.  If this requirement is not met, the evidence is inadmissible and cannot be considered by the Court in ruling on the motion for summary judgment.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Mr. Squatrito seeks to admit documents of which he has no personal knowledge, including documents produced by third parties in this litigation that he cannot authenticate and that are not self-authenticating.

**4. Portions of the Squatrito Declaration and Exhibits Attached to the Fujichaku Declaration Contain Inadmissible Hearsay and should be Stricken.**

Out-of-court statements offered to prove the truth of the matter asserted by the statement are inadmissible if no exception applies.  FRE 801-02.

**5. Portions of the Squatrito Declaration are Based on Specialized Knowledge and should be Stricken.**

Federal Rule of Evidence 701 provides that "[i]f the witness is not testifying as an Expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and . . . (c) not based on scientific, technical, or other specialized knowledge . . . ."  Although much of Mr. Squatitro's declaration testimony is based on his "familiar[ity] with and experience[] in" the surety industry (*see* Squatrito

Decl. ¶ 8), he has never been disclosed as an expert in this litigation.  (Oki Decl.;

Ex. I; Plaintiff AMICO's Expert Witness Disclosures; Plaintiff AMICO's

Supplemental Expert Witness Disclosures.)  He did not offer an expert report on

July 1st as required by the Scheduling Order, and AMICO's attempt to now offer

him as a surety expert is inappropriate.  (Oki Decl. ¶ 11.)  To the extent AMICO is

seeking to offer Mr. Squatitro as a surety expert based on specialized knowledge,

his testimony should be stricken.

> ### 6.    Portions of the Squatrito Declaration are mere Legal Conclusions and May not be Relied upon to Oppose Summary Judgment.

Bare legal conclusions and other conclusory statements not supported by

personal knowledge may not be relied upon to oppose summary judgment.  *See,*

*e.g.*, *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997)

("conclusory allegations . . . without factual support, are insufficient to defeat

summary judgment").

> ### 7.    Exhibits Attached to the Fujichaku Declaration Lack Any Oath or Affirmation and should be Stricken.

Testimony may only be given on oath or affirmation.  FRE 603.  The

deposition transcripts attached to the Fujichaku Declaration do not include any

oath or affirmation, and the deponents' testimony, including testimony purporting

to authenticate exhibits, should be stricken on this basis.  Similarly, interpreters

must swear an oath for translated depositions.  FRE 604.

## II.    OCD'S OBJECTIONS TO THE SQUATRITO DECLARATION

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| 1. | ¶ 14: "As is customary, as a precondition to AMICO's issuance of the Bonds, and partial consideration therefore, AMICO required that Oceanside enter into a written general indemnity agreement." | Lacks personal knowledge; <br><br> Offers legal conclusions regarding conditions and consideration related to the Bonds; <br><br> Inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order. <br><br> Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005.  He therefore cannot establish personal knowledge of facts that happened before that time, including the execution of the indemnity agreement. No other evidentiary basis is asserted. <br><br> Whether the general indemnity agreement was in "partial consideration therefore" or a "precondition to AMICO's issuance of the Bonds" is a legal conclusion. <br><br> Whether indemnity agreements are customarily preconditions to and consideration for issuance of bonds is inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order. |
| 2. | ¶ 15: "Surety bonds, unlike insurance, are underwritten | Lacks personal knowledge of what AMICO expected in 1999 and 2001; |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | based on the financial capacity of the bond principal and its indemnitors.  The surety, such as AMICO here, expects to be held harmless by its principal and indemnitors from and against all loss on its Bonds." | Inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005.  He therefore cannot establish personal knowledge of facts that happened before that time, including the execution of the indemnity agreement. No other evidentiary basis is asserted. |
| 3. | ¶ 17:  "Based on my knowledge of AMICO's underwriting file, I am informed and believe that when OCDC assigned its general and limited partnership interests to OCD, LLC ("OCD"), AMICO again requested that Oceanside execute a general indemnity agreement to assure that it obtained the indemnity of the new general partner, OCD." | Lacks personal knowledge;<br><br>Hearsay;<br><br>Conclusory;<br><br>Speculation.<br><br>Squatrito asserts that his knowledge is based on AMICO's underwriting file, rather than on personal knowledge and that he is "informed and believes."  If Mr. Squatrito is the custodian of records, he would have been able to offer the relevant document as a business record (provided he laid the appropriate foundation) but cannot simply testify about documents that he has allegedly found and read and then offer a conclusory statement based on those unidentified documents from a time period (2001) when he was not at AMICO. |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | The assertion is based on out-of-court information (AMICO's underwriting file) and is offered to prove the truth of the matter asserted.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including the execution of the indemnity agreement. No other evidentiary basis is asserted. |
| 4. | ¶ 19: "Consistent with standard surety underwriting practices, each of the GIAs provide [sic] for the broadest and most expansive scope of indemnification to protect AMICO from and against all losses paid or incurred by AMICO by reason of having executed the Bonds. | Offers legal conclusions on interpretation of the GIAs;<br><br>Inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order.<br><br>This assertion offers legal conclusions on the scope and interpretation of the GIAs. It does not allege a fact based on personal knowledge; it is an interpretation of the GIAs, *i.e.*, a bare legal conclusion.<br><br>Whether a broad indemnification is "consistent with standard surety underwriting practices" relies on specialized knowledge and is inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order. |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| 5. | ¶ 20: ". . . Although described as 'estimated' completion dates, Oceanside had committed to complete the improvements by those dates. . . ." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis.<br><br>Hearsay.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including the execution of the bonds in 1999 and 2001 containing the completion dates. He cannot testify that "Oceanside had committed to complete the improvements by those dates," as he is not an employee of Oceanside and was not involved in the project until after 2005. No other evidentiary basis is asserted. |
| 6. | ¶ 21: "AMICO has not received any written extensions to extend the completion dates for any of the bonded improvements covered by the bonds issued on behalf of the Club or the HCA as obliges, including any written extensions for the completion dates of the Golf Course or the Golf Maintenance Facility under the Amended Club Improvements Bond, or the telephone, electric, or utility ductline-cable work for the | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Speculative;<br><br>Conclusory.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether AMICO received any written extensions before 2005. He similarly |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| . | Phase I private subdivision improvements bond on behalf of the HCA | has not submitted any evidence to suggest that he has looked for such written extensions in AMICO's files or that such documents were regularly made and preserved in the ordinary course of business. His statement is therefore speculative. No other evidentiary basis is asserted. |
| 7. | ¶ 22: "The AMICO Bonds are continuous in nature until released or exonerated by the obligees on the Bonds. . . . All of the AMICO Bonds are non-cancellable." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Offers legal conclusions on the interpretation of the Bonds.<br><br>This assertion does not allege a fact based on personal knowledge. Squatrito cannot have personal knowledge of the intent of the parties when issuing the bonds. This assertion is an interpretation of the bonds, *i.e.*, a bare legal conclusion. |
| 8. | ¶ 23: "When AMICO entered into 'renewals' of the Bonds, although termed 'renewals,' there was not in fact a 'renewal' in the true sense because the Bond was not being extended beyond the original term of liability, the original term of liability being until the Bond was released or exonerated by the oblige. Rather, this was just the anniversary date for the bonds." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Offers legal conclusions on the interpretation of the Bonds.<br><br>This assertion does not allege a fact based on personal knowledge. Squatrito cannot have personal knowledge of the intent of the parties when issuing the bonds. This assertion is an interpretation of the bonds, *i.e.*, a bare legal conclusion. |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including the renewals. No other evidentiary basis is asserted. |
| 9. | ¶ 24: "That the AMICO Bonds were and are continuous in nature was memorialized in AMICO's initial underwriting commitment transmitted through Oceanside's bonding agent dated July 9, 1999, a copy of which is attached hereto as **Exhibit 4** . . . ." | Lack of personal knowledge; Lacks other evidentiary basis; Offers legal conclusions. This assertion does not allege a fact based on personal knowledge. Squatrito cannot have personal knowledge of the intent of the parties in entering into the agreement or personal knowledge regarding whether the initial underwriting commitment was intended to memorialize the continuous nature of the AMICO Bonds. This assertion is an interpretation of the bonds and an allegedly related memorial, *i.e.*, a bare legal conclusion. |
| 10. | ¶ 25: "The invoices transmitted by AMICO to Oceanside for the payment of premium for the Bonds expressly recited the continuous nature of the Bonds. True and correct copies of several such invoices dated September 13, 2001, September 16, 2001, | Lack of personal knowledge; Hearsay; Lack of authentication. Exhibit 5 contains documents produced by a third party, Willis, and is therefore not a document held in the ordinary course of business of |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | September 13, 2004, September 16, 2004, November 16, 2004, and June 13, 2005 are attached hereto as **Exhibit 5**. As shown thereon, each of these premium invoices state in pertinent part as follows: [']The Bond issued on your behalf is continuous in nature. If we have not received a written Release or Reduction prior to the Due Date, the Premium shall remain Due and Payable.[']"<br><br>Ex. 5 (first two pages bearing W bates number). | AMICO. Mr Squatitro has no personal knowledge of documents dated 2004 produced by Willis (identified by a W bates number) and they are consequently inadmissible for lack of foundation and failure to authenticate.<br><br>The assertion is based on out-of-court information (an invoice transmitted to Oceanside) and is offered to prove the truth of the matter asserted. |
| 11. | ¶ 26: "It was at all times outside of the control of AMICO and solely within the control of Oceanside and its general partners as to whether the bonded improvements were completed and whether the obligee provided such a release." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Offers legal conclusion on the interpretation of the Bonds regarding AMICO's ability to refuse to renew the Bonds.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether completing the bonded improvements and the obligee providing a release was within the control of Oceanside "at all times." No other evidentiary |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | basis is asserted. |
| 12. | ¶ 27: "Consistent with standard surety underwriting practices, in order to terminate the liability of an Indemnitor to AMICO under the GIA, the Indemnitor was required to give written notice to AMICO. Further, such termination applies only to future bonds and not the Bonds already issued." | Offers legal conclusions;<br><br>Inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order.<br><br>The means and scope of termination under the GIA is a legal conclusion not supported by competent evidence.<br><br>Whether such termination practices are "consistent with standard surety underwriting practices" is inadmissible expert testimony based on specialized knowledge from a witness not disclosed as an expert in accordance with the Scheduling Order. |
| 13. | ¶ 28: "AMICO did not receive any written notice of termination pursuant to termination provisions set forth in the 2001 GIA from any Indemnitor, including Oceanside or OCD." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Hearsay;<br><br>Conclusory.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether AMICO received any written notice of termination before 2005. He has not established that he searched for written notice of termination or that such |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | documents were regularly made and preserved in the regular course of business and his statement is conclusory; no other evidentiary basis is asserted. |
| 14. | ¶ 30: "Neither OCD nor Oceanside obtained the prior written consent of AMICO prior to selling OCD's general or limited partnership interests to Red Hill." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether OCD or Oceanside obtained written consent from AMICO prior to selling OCD's partnerships interests in 2002; He has not established that he searched for written notice or that such documents were regularly made and preserved in the regular course of business and his statement is conclusory; no other evidentiary basis is asserted. |
| 15. | ¶ 31: "AMICO did not receive written notice from either OCD, Red Hill or Oceanside that OCD was dissociating from Oceanside as a general partner as a result of the Partnership Interests Purchase Agreement dated January 22, 2002." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Conclusory.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | AMICO received written notice regarding OCD's dissociation from Oceanside in 2002. He has not established that he searched for written notice or that such documents were regularly made and preserved in the regular course of business and his statement is conclusory; no other evidentiary basis is asserted. |
| 16. | ¶ 32: "At no time has AMICO released OCD from any of its obligations under the GIAs or from any other obligation owed by OCD to AMICO." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Conclusory.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether AMICO released OCD from any obligation prior to 2005. He has not established that he searched for a release or that such documents were regularly made and preserved in the regular course of business and his statement is conclusory; no other evidentiary basis is asserted. |
| 17. | ¶ 33: "At Oceanside's and the obligees' request, AMICO issued a dual obligee riders [sic] adding Deere Credit Corp. ("Deere") as an obligee to one or more of the Bonds. . . ." | Lack of personal knowledge;<br><br>Lacks other evidentiary basis;<br><br>Hearsay.<br><br>Paragraph 5 states that Squatrito has only been employed at AMICO's |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened in 2001 (when Deere Credit Corp was included as an obligee), nor can he provide unsupported testimony on whether Oceanside or the obligees requested obligee riders or whether the riders were issued; no other evidentiary basis is asserted. |
| 18. | ¶ 34: "I am informed and believe that AMICO issued the Deere dual obligee riders during the time when OCD was a general partner of Oceanside." | Lack of personal knowledge; <br><br> Hearsay; <br><br> Speculative and conclusory; <br><br> Paragraph 5 states that Squatrito has only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether AMICO issued dual obligee riders when OCD was a partner of Oceanside. <br><br> This assertion is based on unspecified out-of-court statements ("I am informed") and is offered to prove the matter asserted. |
| 19. | ¶ 35: "I am informed and believe that Deere provided financing to Oceanside to facilitate the purchase by buyers of lots on the Project." | Lack of personal knowledge; <br><br> Hearsay; <br><br> Speculative and conclusory; <br><br> Paragraph 5 states that Squatrito has |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | only been employed at AMICO's parent Lumbermens since 2005. He therefore cannot establish personal knowledge of facts that happened before that time, including whether Deere provided financing to Oceanside to facilitate the purchase of buyers of lots on the Project in 2001.<br><br>A key element of AMICO's opposition to OCD's claim that adding Textron was a "material change" is AMICO's allegation that Deere performed the same function as Textron. AMICO has failed to meet their burden to produce evidence to defeat OCD's summary judgment motion because Mr. Squatitro has no personal knowledge of events prior to 2005, has offered no documentary evidence to support this statement, and is attempting to admit hearsay evidence, the source of which is entirely unknown. |
| 20. | ¶ 36: "I am informed that at some point, Oceanside's relationship with Deere was terminated, whereupon, in or about 2006, Oceanside approached AMICO with the information that Textron Financial Corporation ("Textron") would provide substantially similar financing as that which Deere had provided." | Lack of personal knowledge;<br><br>Hearsay;<br><br>Speculative and conclusory;<br><br>Squatrito states that this information is based on statements made to him ("I am informed") rather than personal knowledge. Squatrito was clearly not involved in the Deere termination or the adding of Textron and cannot provide testimony on events for which |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | | he lacks personal knowledge. |
| | | This assertion is based on unspecified out-of-court statements, one of which was allegedly made by Oceanside ("") and is offered to prove the matter asserted. Notably, this is evidence upon which AMICO relies to prove that Textron would "provide substantially similar financing as that which Deere had provided." This statement is inadmissible hearsay. |
| 23. | ¶ 37: "I am informed and believe that the replacement financing provided by Textron was no different from the function that Deere provided." | Lack of personal knowledge;<br><br>Hearsay.<br><br>Speculative and conclusory.<br><br>Squatrito states that this information is based on statements made to him ("I am informed") rather than personal knowledge. There is no evidence that Mr. Squatitro was involved at all with adding Textron as an obligee. He was certainly not involved in the 2001 transactions involving Deere.<br><br>This assertion is based on unspecified out-of-court statements ("I am informed") and is offered to prove that "the replacement financing provided by Textron was no different from the function that Deere provided." This statement is inadmissible hearsay that lacks foundation and is conclusory. |
| 24. | ¶ 40: "The issuance of the Textron dual obligee rider | Offers legal conclusion on whether the change was "material." |

| OCD Objection No. | Squatrito Declaration | OCD's Objections |
|---|---|---|
| | was not a significant or material change to the bonded obligations in the context of the Oceanside Bonds where AMICO had already provided dual obligee riders naming Deere and Textron was providing essentially the same function as Deere in connection with the Project. | Hearsay;<br><br>Speculative and conclusory;<br><br>Lack of personal knowledge. |
| 25. | ¶ 47: ". . . as required by the GAIs." | Offers legal conclusion.<br><br>Whether the GAIs required Oceanside to comply with AMICO's indemnity and collateral demands is a legal conclusion not supported by competent evidence. |

## III.    OCD'S OBJECTIONS TO EXHIBITS OF FUJICHAKU DECLARATION

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
| 1. | Exhibits 14, 15, and 20, Extract and Exhibits from Deposition of Masato Hasegawa, September 21, 2011 | Lack of oath or affirmation.<br><br>AMICO fails to include deposition testimony swearing to or affirming the statements made during the deposition in violation of FRE 603. The Hasegawa deposition was translated and AMICO has failed to include deposition testimony swearing to or affirming the statements made by the translator in violation of FRE 604. Without the translator's oath, the |

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
| | | Hasegawa transcript cannot be admitted as statements of Mr. Hasegawa because Mr. Hasegawa did not make any statement during his deposition in English. |
| | | The testimony (Exhibit 15), as well as Exhibits 14 and 20 attached to the deposition transcript, should be stricken on these grounds. |
| 2. | Exhibit 16, Extract of Deposition Transcript of John deFries, August 12, 2011 | Lack of oath or affirmation; |
| | | Lack of personal knowledge or foundation; |
| | | Speculative; |
| | | Hearsay. |
| | | AMICO cites this deposition testimony for the proposition that Oceanside's general manager, John deFries, testified that certain work was not completed by December 2001. [Opp. Mem. at 14-15, 38-39] |
| | | AMICO, however, fails to include any deposition testimony that establishes that Mr. deFries' is an employee of Oceanside, what his position at Oceanside is, or that he has any personal knowledge with respect to the testimony that is cited. Moreover, the deposition exhibits cited in the excerpt (Deposition Exhibits 125 and 136) have not been admitted into evidence by AMICO. |

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
| | | AMICO has failed to establish that this witness has any personal knowledge or foundation for the testimony cited. The testimony is speculative. |
| 3. | Exhibit 17, Extract of Deposition Transcript of Stephen Marotta, July 20, 2011 | Lack of oath or affirmation; <br><br> Lack of personal knowledge or foundation; <br><br> Speculative; <br><br> Hearsay. <br><br> AMICO cites this deposition testimony for the proposition that Oceanside and the Club did not agree in writing to extend the completion date for the Golf Course or Golf Maintenance Facility. [Opp. Mem at 38]. <br><br> AMICO again however, fails to include any deposition testimony that establishes Mr. Marotta's position at Oceanside, when he held that position at Oceanside, or that he has personal knowledge with respect to the testimony provided. <br><br> AMICO has failed to establish that this witness has any personal knowledge or foundation for the testimony cited. The testimony is speculative. |
| 4. | Exhibit 18, Extract of Deposition Transcript of Jo-Ann Hamilton, July 21, 2011 | Lack of oath or affirmation; <br><br> Lack of personal knowledge or |

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
| | | foundation; |
| | | Speculative; |
| | | Hearsay. |
| | | AMICO cites this deposition testimony for the proposition that certain work was not completed. [Opp. Mem at 15, 39]. |
| | | AMICO has failed to include any deposition testimony that establishes Ms. Hamilton was employed by Oceanside, what position she held, and when she held that position. |
| | | AMICO has failed to establish that this witness has any personal knowledge or foundation for the testimony cited. The testimony is speculative. Counsel at the deposition made the objection that the questions cited lacked foundation and AMICO has provided no evidence to remedy those objections. |
| 5. | Exhibit 19, Extract of Deposition Transcript of Maureen O'Connell, September 1, 2011 | Lack of oath or affirmation; |
| | | Lack of personal knowledge or foundation; |
| | | Hearsay. |
| | | AMICO cites this deposition testimony for the proposition that "we had the indemnity of Japan Airlines". [Opp. Mem. at 16]. The cited |

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
| | | testimony does not include this quoted language or anything similar.<br><br>AMICO has failed to include any deposition testimony that establishes who Ms. O'Connell is, what position she holds at what company, and what personal knowledge she has with respect to the cited testimony.<br><br>AMICO has failed to establish that this witness has any personal knowledge or foundation for the testimony cited. The testimony is speculative. |
| 6. | Exhibit 22, Extract of Deposition Transcript of William Siwek, July 6, 2011 | Lack of oath or affirmation;<br><br>Lack of personal knowledge or foundation;<br><br>Speculative;<br><br>Hearsay.<br><br>AMICO cites this deposition testimony for the proposition that the financing provided by Textron was functionally no different than that Deere had provided. [Opp. Mem. at 44-45].<br><br>AMICO has failed to include any deposition testimony that establishes who Mr. Siwek is, what position he holds at what company, and what personal knowledge he has with respect to the cited testimony. |

| OCD Objection No. | Fujichaku Declaration Exhibit | OCD's Objections |
|---|---|---|
|  |  | AMICO has failed to establish that this witness has any personal knowledge or foundation for the testimony cited. The testimony is speculative. |
| 7. | Exhibit 21, Expert Report of Thomas Ueno, September 9, 2011 | Untimely expert report in violation of Scheduling Order; Hearsay. *See* Section I.A above. |

## IV.  Conclusion

For the foregoing reasons, OCD respectfully requests that the Court strike

the Ueno Report in its entirety and strike portions of the Squatrito Declaration as

indicated above in Sections II-III.

DATED: Honolulu, Hawaii, October 3, 2011.

/s/SHIMPEI OKI
CHERYL A. NAKAMURA
REGINAULD T. HARRIS
SHIMPEI OKI
Rush Moore LLP

Attorneys for Defendant/Cross-Claimant OCD, LLC